WESTERN UNION TELEGRAPH COMPANY *v.* FREEMAN.

Opinion delivered November 8, 1915.

1.  APPEAL AND ERROR—OBJECTION FIRST MADE ON APPEAL.—A cause will not be reversed for an error made by the trial court, where the error was not called to the attention of the trial court, and the issue was raised on appeal for the first time.

2.  TELEGRAPH COMPANIES—NEGLIGENCE—INTERSTATE MESSAGE—FAILURE TO PLEAD DEFENSE.—In an action for damages growing out of defendant telegraph company's failure to deliver a message promptly, where defendant filed an answer setting up defense, *held*, where defendant failed to raise at the trial the defense of the interstate character of the message, and raised the same for the first time on appeal, it will be held to have waived any defense it might have had, growing out of that fact.

3.  TELEGRAPH COMPANIES—NEGLIGENT SENDING OF MESSAGES.—Two messages were delivered to defendant telegraph company relating to the serious illness of a person named in the first message sent; *held*, the two messages were so related as to put defendant upon notice that damages would result from its failure to deliver either message.

4.  TRIAL—MOTION FOR A DIRECTED VERDICT—INTRODUCTION OF OTHER EVIDENCE—DISCRETION.—Appellee having rested her case, appellant presented and argued a motion requesting a peremptory instruction in its favor. The court overruled the motion. *Held*, it was proper thereafter for the court to permit appellee to introduce further evidence, which was otherwise competent.

5.  TELEGRAPH COMPANIES—FAILURE TO DELIVER MESSAGE—DAMAGES—PRESENTATION OF CLAIM.—When a telegraph company, in its contract with the sender of a message, stipulated, that a claim for damages under said contract, must be made within sixty days after the message was filed with the company, *held*, under the facts, that certain letters written in plaintiff's behalf, constituted the presentation of a claim to the defendant company, and that the claim was properly made.

6.  TELEGRAPH COMPANIES—NOTICE OF DAMAGES.—The stipulation in the contract of a telegraph company that it shall not be liable "when the claim is not presented in writing within sixty days after the message is filed with the company for transmission," is fully met with when the claimant notified the company in writing within the time specified, that he has a claim for damages for mental anguish, and expects the defendant to settle such claim.

7.  TELEGRAPH COMPANIES—FAILURE TO DELIVER MESSAGE—AMOUNT OF DAMAGES.—Where a sister was prevented from attending the funeral of her sister by reason of the negligence of defendant telegraph

company in not delivering a message to her, *held*, under the evidence, that a verdict of $1,000 was excessive, and that compensatory damages in the sum of $400 would be awarded.

Appeal from Lee Circuit Court; *J. M. Jackson,* Judge; judgment modified.

### STATEMENT BY THE COURT.

Appellee recovered judgment against the appellant in the sum of $1,000 damages for mental anguish which she alleged accrued to her by reason of the negligence of the appellant in delaying the transmission and delivery of certain telegrams. One of these telegrams was from appellee's mother, delivered to appellant's agent at Hot Springs about 8 o'clock on the morning of October 26, 1913. It was addressed to appellee at Moro, Arkansas, and read, "Roxie is very low; come at once." Roxie was the sister of appellee. She died at 2:30 P. M. on October 26. The other telegram was delivered by the appellee's husband to appellant's agent at Moro, Arkansas, about 8:20 on the morning of October 27, 1913, and was addressed to her mother at Hot Springs. It read, "Wait, if possible; will be at Bear tonight."

Appellee alleged that by reason of the negligence of the appellant in failing to transmit and deliver the first telegram, she was denied the comfort of seeing her sister before the latter's death, from which she suffered mental anguish, and that on account of appellant's negligence in failing to deliver the last telegram, she was denied the comfort of attending the funeral and viewing the remains of her sister.

Appellant answered, denying specifically the allegations of negligence, and set up that the first message was not transmitted and received at Moro between 8:30 A. M. and 4:30 P. M., appellant's office hours, because their wires to Moro were in bad condition, which made it impossible to transmit or receive messages over said wires between the hours mentioned above; that the wire trouble was not due to negligence or carelessness of the defendant; that the 26th of October, 1913, was Sunday, and under the rules and regulations of the company the office at

Moro was not open for the receiving and transmission of messages between the above hours; that it would have been impossible for plaintiff to have arrived in Hot Springs on October 26, until after the death of her sister, if the message had been immediately delivered to appellee. Appellant also alleged that the delay in transmitting the message from appellee to G. M. Humphreys of October 27, 1913, was on account of wire trouble which was unknown to the appellant's agents and servants; that appellant's agent at Moro so advised appellee at the time the message was received at Moro for transmission to Hot Springs. Appellant further set up, affirmatively, that the messages were delivered to appellant to be transmitted under its rules and regulations, one of which is as follows: "The company will not be liable for damages or statutory penalty where the claim is not presented in writing within sixty days after the message is received for transmission." Appellant set up that appellee had not complied with this provision of the contract, and therefore was not entitled to maintain her suit.

*Geo. H. Fearons,* and *Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellant.

The court should have granted appellant's request for a peremptory instruction, because:

1. The messages were interstate messages, and as to such the Arkansas mental anguish statute is void. 114 Ark. 193; 174 S. W. 232; 115 Ark. 564; 174 S. W. 552.

We think the law is settled that where a message is sent from one point in the State to an addressee at another point in the same State, if, through the necessity of the case, owing to the manner in which the lines of the telegraph company are laid, it is necessary to send the message outside of the State to a relay station, such message becomes interstate commerce. 122 U. S. 347; 87 Ark. 562; 167 S. W. 96; 187 U. S. 617.

2. The undisputed evidence shows that the message of the 26th was filed at a time when it would have been impossible for the plaintiff to have reached Hot Springs in time to have seen her sister alive. The cause of action

for failure to see her sister alive, is therefore, eliminated from the case.

There is nothing in the message sent on the 27th to put appellant upon notice of any mental anguish on the part of appellee for failure to see her sister's remains before burial.

3.   The court erred in refusing to direct a verdict on appellant's special plea that no claim was presented within sixty days. The letter of Humphreys to the superintendent, was not sent either by appellee or her attorney, and does not come within the rule laid down by this court in the *Moxley* case, 80 Ark. 560; 86 Ark. 331.

*E. H. McCulloch* and *H. F. Roleson,* for appellee.

1.   It is only by inference from the testimony that it can be said that the message was sent over a route, a portion of which was outside of this State. But if the testimony justified that conclusion, it would not be interstate commerce, since the message originated and was addressed to stations in this State.   145 U. S. 192; 113 N. C. 213; 27 L. R. A. 570; 18 S. E. 389; 21 S. E. 391, 27 L. R. A. 843; 220 U. S. 364, 55 L. Ed. 498.

But this is a defense which was not raised in the lower court, and appellant will not be permitted to raise it here.   88 Ark. 189; 101 Ark. 250; 103 Ark. 387.

2.   If either the message of the 26th or of the 27th had been delivered in reasonable time appellant could have seen her sister's remains and have attended the funeral. In alleging and proving the failure to deliver the message of the 26th, appellee was not confined to showing that she suffered from failure to see her sister alive, but the nondelivery incurred against appellant all damages accruing by reason of such negligence.

The agent who personally delivered the message of the 26th to the same man who filed the message of the 27th for transmission, was bound to know that both messages related to the same matter.

3.   The letter from Humphreys to the district superintendent of appellant of date October 30, 1915, gave all the details and circumstances connected with the failure

to deliver the message, and informed the company that it was presented on behalf of appellee for mental anguish and placed the company upon notice of her claim for damages. This letter was a sufficient compliance with the requirement as to time of presentation of claim, and it was not necessary that this letter state the amount of the claim.  63 Ark. 331.

Moreover, the superintendent recognized and treated this letter as a claim, as appears by the correspondence.

Wood, J., (after stating the facts).  It could serve no useful purpose to discuss in detail the evidence on the issue of negligence.  This was an issue for the jury, and there was testimony to sustain the verdict on that issue. The undisputed evidence, however, shows that if the message of October 26 had been transmitted and delivered to appellee without delay, that it would not have been possible for her to have reached her sister's bedside before she died, and therefore the damages for mental anguish which she alleges accrued to her on account of her not being able to see her sister before the latter's death passed out of the case.  However, the jury were warranted in finding from the testimony that if this telegram and the telegram of October 27, had been promptly transmitted and delivered that appellee could and would have attended her sister's funeral.  The issue of negligence and the amount of damages arising on this branch of the case was presented to the jury in instructions which we find contain no prejudicial error.  There was a conflict in the evidence on this issue, and it was therefore one for the jury.

At the close of the testimony the appellant, among others, presented the following instruction:  "You are instructed under the law and the evidence in this case to find your verdict for the defendant."

Appellant contends that the undisputed evidence shows that the messages in suit were interstate messages, and that such being the case, it was entitled to an instructed verdict, under the doctrine of *Western Union Tel. Co.* v. *Johnson,* 115 Ark. 564, 171 S. W. 859.  In that

case we followed the ruling of the Supreme Court of the United States in *Western Union Telegraph Co.* v. *Brown,* 234 U. S. 542, and dismissed the case because the trial court was advised from the message itself in suit that it was an interstate message. The issue as to the interstate character of the message was raised by the message itself. But in this case the messages on their face show that they were intrastate messages. Neither by the answer, the testimony nor the instructions, did the appellant raise the issue of interstate commerce in the court below. This was not even set up as one of the grounds in the motion for a new trial. The pleadings raised no such issue, and consequently the testimony was not directed to any such issue. The appellant's testimony was directed solely to the issue of negligence and to the other matters set up by way of affirmative defense. But nowhere did it attempt to show that the messages were interstate commerce. The only testimony that was adduced tending to show that these were interstate commerce messages was drawn out by appellee's counsel incidentally in the cross-examination of one of appellant's witnesses who had testified for the purpose of rebutting the testimony in appellee's behalf on the issue of negligence.

Now, the issue of negligence was raised in the pleadings, and the testimony was directed to that issue. Appellant was contending in the court below that the undisputed evidence showed that the appellant was not negligent. It also contended that the appellant, even if negligent, was not liable because the appellee had failed to comply with the provision of the contract requiring her to present her claim in writing for damages within sixty days after the messages had been filed with appellant for transmission. The trial court therefore could have only concluded, when appellant presented its prayer for a peremptory instruction, that such prayer had reference to the issues that were raised by the pleadings and the evidence.

(1) It has been the uniform holding of this court not to reverse the trial court for errors to which its atten-

tion was not called. The trial court was doubtless familiar with the many recent decisions of this court following the decision of the Supreme Court of the United States in *Western Union Tel. Co.* v. *Brown, supra,* and if appellant, by its answer, or the testimony, followed by instructions, had called the attention of the court to the contention it now makes here for the first time, doubtless there would have been no necessity for this appeal. We are convinced from this record that the trial court did not rule, and could not have ruled upon the interstate commerce character of the messages in suit. It would be manifestly unfair to the trial court to reverse it as for an error in a ruling which it did not make or have the opportunity to make. This would be allowing the appellant to hold in reservation masked batteries to be turned loose upon the trial court for the first time on appeal. Such can not be done. *Radcliffe* v. *Scruggs,* 46 Ark. 96; *Martin* v. *McDiarmid,* 55 Ark. 213, and other cases collated in volume 1, Crawford's Digest, Appeal and Error, VIII-b, pages 69, 70; *State Mutual Ins. Co.* v. *Latourette,* 71 Ark. 242; *St. Louis, I. M. & S. Ry. Co.* v. *Boback,* 71 Ark. 427; *Newton* v. *Russian,* 74 Ark. 88; *Schenck* v. *Griffith,* 74 Ark. 557; *Little Rock Ry. & Elec. Co.* v. *North Little Rock,* 76 Ark. 48, and other cases collated in volume 3, Crawford's Digest, Appeal and Error, VIII-b, page 32, *et seq.; Plummer* v. *Reeves,* 83 Ark. 10; *Jones* v. *Seymour,* 95 Ark. 593; *Brown* v. *LeMay,* 101 Ark. 95, and other cases cited in volume 4, Crawford's Digest, Appeal and Error, V-a, pages 43, 44.

(2)     Since appellant filed an answer setting up other affirmative defenses, it must be treated as having waived the defense of the interstate commerce character of the messages that it here makes for the first time. Had it set up this defense in the answer, appellee might have controverted it by showing that it was not necessary for the appellant, in the exercise of ordinary care, to have sent the messages, which were *prima facie* intrastate, over lines running outside of the State. At least, appellee would have had the right to make an issue on this point had it been raised in the trial court.

(3) Appellant contends that the message of October 27 did not put the appellant upon notice of any special damages for the reason that this message was addressed to Mr. G. M. Humphreys, at Hot Springs, and there was nothing in the message itself to connect Bear, Arkansas, with Miss Roxie Humphreys' serious illness at Hot Springs.

It is impossible to divorce the message of the 26th of October from that of the 27th. The same agent who received and delivered the message from Hot Springs to Mr. Freeman for Mrs. Freeman, the appellee, also sent the message of October 27, addressed to G. M. Humphreys and sent by L. Freeman. The first message was a notice that a certain person was very low. The second message requested the parties to wait, notifying them that the sender would be "at Bear tonight." Taking the two messages together, it was sufficient to warrant the finding that the appellant had notice that the messages related to the matter of the serious illness and probable death of Miss Roxie Humphreys. There was at least enough in the evidence to make this an issue for the jury and to entitle the appellee to any damages which accrued to her by reason of the negligence of the company in failing to transmit and deliver the same promptly.

We find no errors in the rulings of the court upon the prayers for instructions that were granted and refused on the issue of negligence and damages.

Appellant complains at the refusal of the court to direct a verdict on its special defense that no claim was presented within sixty days for damages growing out of appellant's alleged failure to deliver the telegram of October 27. The contract provided that the company should not be liable for damages "where the claim is not presented in writing within sixty days after the message is filed with the company for transmission."

On the 30th of October, 1913, W. S. Humphreys, the uncle of the appellee, wrote to the district superintendent of appellant at Oklahoma City, Oklahoma. The letter, after reciting the facts and circumstances concerning the

messages, and the failure to deliver the same, and the result of such failure, reciting that on account of the failure to promptly transmit and deliver these messages, that Miss Roxie Humphreys, the sister of appellee, died before the latter had the opportunity to see her, and was buried before she could see the remains and attend the funeral, stated that appellee had been very heart-broken ever since, continuing as follows: "Now, what I have advised her husband to do is to write to you and see what kind of a settlement he can make without a lawsuit. We have a good lawyer that will take the case, but prefer to settle with you direct if possible. What can we do, or what will you do? There was failure to deliver both telegrams. Let me hear from you at once. Failing to hear from you will cause suit to be brought in the courts." The superintendent answered this communication, and there was quite a lengthy correspondence between W. S. Humphreys, representing the appellee, and the superintendent of the appellant.

(4)  Appellant complains of the ruling of the court in permitting the introduction of part of the correspondence between appellee and appellant concerning the subject-matter of a settlement of appellee's claim after appellee had rested her case and a prayer for a peremptory instruction by appellant had been presented and refused. But appellant's ground of objection to this evidence was "that plaintiff has closed her case and request for a peremptory instruction has been made, argued and refused." Now, it was within the discretion of the court to permit the introduction of this testimony at the time it was offered and the court has not abused its discretion in so doing. The appellant made no specific objection to the correspondence on the ground that it was immaterial or irrelevant, or that no foundation was laid for the same. Nor did appellant move to exclude the correspondence on any such ground. Therefore, no prejudicial error appears in this ruling of the court.

In these letters it is made very plain that Humphreys, acting for the appellee, was presenting a claim to appel-

lant's superintendent for the mental anguish that she had suffered on account of the alleged negligence of the appellant's agent in not promptly transmitting and delivering the messages concerning her sister's illness and death. The first letter of Humphreys asked the superintendent "what kind of a settlement he could make without a lawsuit." On one of the letters of the superintendent, in reply to Humphreys, is endorsed, "Claim of Mrs. Dell Freeman, October 30," and on other letters is the following endorsement: "Mrs. Dell Freeman, by W. S. Humphreys."

(5) It is unnecessary to set out these letters in detail. Suffice it to say they show that Humphreys, acting for the appellee, was presenting to the superintendent of appellant a claim of appellee of damages for mental anguish on account of appellant's failure to promptly transmit and deliver the messages in suit. This was the subject-matter of the correspondence between appellee's agent and the agent of the appellant. It was not necessary that the appellee, under the provisions of the contract quoted, should present a formal statement of the amount of the damages that she claimed for her mental anguish. It was only necessary that she present in writing to the appellant within the sixty days specified a claim for such damages. See *Kansas & Ark. Valley Rd. Co.* v. *Ayers,* 63 Ark. 331.

In *Western Union Tel. Co.* v. *Moxley,* 80 Ark. 560, there was not only no claim for damages presented, "but no notice was given that plaintiff claimed damages for anything beyond the cost of the message and telephone charges." In the *Moxley* case the only notice to the company was that, "in addition to locating the trouble, will say that I shall also expect to have the cost of the message refunded as well as the amount expended for long distance conversation." In the letter in which the above notice was expressed there was no intimation that the plaintiff, Moxley, would claim any damages for mental anguish. That case is altogether different from this.

In the case of *Western Union Tel. Co.* v. *Nelson,* 86 Ark. 336, it was held that, "a notice which limited the amount claimed to compensation sustained in actual money will not permit a recovery of damages for mental anguish." The case in hand differs from that case in that here the appellee did not, in her claim for a settlement, limit the amount to "compensation sustained in actual money." In the Nelson case the letter specified that "I have sustained at least $75 besides all mental worry, etc."

(6) The purport of the whole correspondence between appellee's agent, W. S. Humphreys, and appellant's superintendent was that appellee was setting up a claim against the appellant for damages on account of her mental anguish. The letters of the superintendent show that he recognized and treated it as such. The letters of the superintendent, all the way through, speak of the "investigation of this claim," etc. The requirements of the contract are fully met when the appellant is notified in writing within the time specified, that the appellee has sustained a claim for damages for mental anguish and expects the appellant to settle such claim. Such provisions, where reasonable, as these are, are upheld, their purpose being to advise the company alleged to be in default, so that it may investigate the circumstances attending the alleged delinquencies soon after their occurrence and settle without a lawsuit or protect itself from any attempted fraud or imposition.

(7) The damages were excessive. While appellee was very much attached to Miss "Roxie," who was her youngest sister, yet it was shown that they had lived apart about two years, and therefore at the time of Miss "Roxie's" death there was no close companionship or relation of dependence one upon the other, as there was between the mother and daughter in the case of *Western Union Tel. Co.* v. *Blackmer,* 82 Ark. 526, where a judgment for $1,000 was held not to be excessive. Appellant's negligence had not deprived appellee of the opportunity for tender ministrations toward her beloved sister in her last illness. That appellee did not have the sweet solace

of a last conscious look, word, or caress in her sister's dying hour, we readily perceive must have given one of appellee's affectionate nature the keenest mental anguish. But, as we have already observed, this was not caused by appellant, and the alleged cause of action in this respect has failed.

The only remaining cause of action is that the appellant, through its negligence, deprived the appellee of the mournful satisfaction of viewing her sister's remains and attending her funeral. On this cause of action a judgment in the sum of $1,000, under the circumstances, is clearly excessive. The design of the statute is to award damages by way of compensation, and not punishment.

Viewing the testimony in its strongest light for appellee, the jury, at most, were not justified in returning a verdict in her favor for a greater sum than $400. The judgment is therefore modified and reduced to that sum, and as thus modified, it is affirmed.

McCulloch, C. J., not participating.