MURPHY v. PROVINCE.

Opinion delivered April 24, 1922.

1. DEATH—RECOVERY FOR—DISTRIBUTION.—Where a cause of action for the wrongful death of a locomotive engineer may be brought under either the Federal or State statutes, the distribution of the sum recovered is controlled by the statute under which recovery is had.

2. DEATH—RECOVERY UNDER STATE OR FEDERAL STATUTE—COMPLAINT.—In an action for the death of an engineer in the employ of a railroad company, a complaint which fails to show whether deceased was engaged in interstate commerce or not

at the time he was killed will support a recovery under either the Federal or State statute providing an action for wrongful death.

3.  DEATH—RAILWAY LOCOMOTIVE ENGINEER—STATUTE REGULATING RECOVERY.—Where a locomotive engineer, while not engaged in interstate commerce, was killed in the performance of work in the line of his duty directly connected with and incident to the use and operation of a railroad, an action for his death is based on Crawford & Moses' Dig. § 7138 *et seq.*, and not on Lord Campbell's act (*Id.*, §§ 1074, 1075).

4.  DEATH—REPEAL OF STATUTE.—Crawford & Moses' Dig., § 7138 *et seq.*, known as the Railroad Hazards Act, repealed the Lord Campbell's Act (*Id.*, §§ 1074, 1075), so far as the two acts were necessarily inconsistent, though the former act provides that it shall not be held to limit the duty of common carriers by railroads or impair the rights of their employees in the existing laws of the State.

5.  DEATH—BENEFICIARIES.—Under Crawford & Moses' Dig., § 7138, providing that a railroad company "shall be liable for all damages to any person suffering injury while he is employed by such carriers, or, in case of the death of such employee, to his or her personal representatives, for the benefit of the surviving widow or husband and children of such employee," *held* that an adult daughter who for ten years had lived with her husband apart from her father, and was not dependent upon him and had received no contributions from him during that time, was not entitled to share in the sum recovered for his death.

Appeal from Pulaski Chancery Court; *J. E. Martineau,* Chancellor; reversed.

*E. B. Kinsworthy* and *B. S. Kinsworthy,* for appellant. Under our statutes (C. and M. Dig.,) §§ 1070-1075) the next of kin who are entitled to damages for the death of a parent are limited to such as sustained a pecuniary loss by his death, and cannot be held to include children living apart from the deceased parent and not dependent upon him. 53 Ark. 117; 51 Ark. 509; 76 Ark. 555; 79 Ark. 62; 93 Ark. 183; 104 Ark. 59; 134 Ark. 1; 203 Pa. St. 511; 93 A. S. R. 774; 272 N. Y. 8, 607.

Where recovery for the death of the parent was had under the Federal statute, the same rule applies as contended for under our State statute. See 57 L. Ed. 1031, 228 U. S. 702; 57 L. Ed. 785, 228 U. S. 173; 59 L. Ed. 1433, 238 U. S. 507.

*Allyn Smith,* for appellee.

The fund should be distributed under the statute of descents and distributions in the proportion it would have been had it been personal property. See 41 Ark. 187; 103 U. S. 11; 222 S. W. 735. The widow is entitled only to a distributive portion. 98 Ark. 102; 79 Ark. 62; 52 Fed. 371; 197 Pac. 97; 14 A. L. R. 509 and notes; 28 Ohio St. 191; 14 S. W. 559; 87 Mich. 374.

In making the distribution the statute must be followed and distribution made as with other personal property. 111 Ala. 572; 59 Ala. 272; 24 Ark. 487; 726 Iowa 158; 108 Iowa 695; 160 N. C. 432; 128 Ga. 371; 18 Ill. 349; 26 Ia. 400; 21 Ill. 606.

McCULLOCH, C. J. Appellant's husband, W. T. Murphy, was a locomotive engineer, engaged in railroad service on the line of the Missouri Pacific Railroad Company, then under government control, and while in such service and working in the line of his duty at Cotter, Arkansas, he received personal injuries from which death ensued.

Appellant and her husband resided in Baxter County, Arkansas, and letters of administration were issued to her upon the estate of said decedent, and she instituted an action in the circuit court of Pulaski County against the Director General of Railroads to recover damages on account of the death of said decedent, alleging that it was caused by negligence in the operation of the railroad. Damages in the sum of $1,000 were sought on account of the pain and suffering of the deceased, and damages in the sum of $9,000 were asked as compensation for the next of kin.

There was a judgment in favor of appellant as such administratrix for the recovery of $500 on the first count for damages, and for the recovery of $7,500 on the second count.

Appellee is a daughter of said decedent, and she instituted the present action in the chancery court of Pu-

laski County against appellant to recover a share of the amount collected under said judgment.

Appellee set forth in her complaint the pleadings in the original action instituted by appellant as administratrix against the Director General of Railroads, and she alleged that she was one of the children and distributees of the estate of said decedent and was entitled to an equal share of said amount so recovered.

Appellant filed her answer in the cause, disputing the right of appellee to share in the amount so recovered, and the record contains a recital that the cause was heard upon an agreement that "the copies of the complaint and judgment entry set forth in plaintiff's complaint are correct, and the facts set forth in defendant's answer are true."

The answer of appellant recites the fact that there are four living children of said deceased, W. T. Murphy, one of whom is an infant nine years of age, and the other three, including appellee, are adults, and that appellee is a married woman, twenty-six years of age, who was, at the time of the death of said W. T. Murphy, and for about ten years prior thereto, living apart from said decedent and was not dependent on said decedent, nor was she receiving any contributions of any kind from him.

It was the contention of appellee below, as here, that the recovery of the funds in controversy was secured in an action under the statute of this State which is generally referred to as having been patterned after Lord Campbell's Act (Crawford & Moses' Digest, §§ 1074, 1075), which provides that the recovery secured thereunder "shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate."

The lower court sustained the contention of appellee and rendered a decree in her favor for a child's part, or one-fourth, of the sum recovered by appellant, after deducting the widow's share of one-third.

The contention of appellant is that said decedent was, at the time of the injury which caused his death, engaged in the operation of a locomotive while used in interstate commerce, and that the recovery was had either under the Federal employers' liability act or under a statute of this State other than the one under which appellee seeks recovery, which provides a different method of distribution of the funds thus secured. Crawford & Moses' Digest, § 7138, *et seq.,* Acts of 1911, p. 55.

The first question, therefore, which we must determine is, which one of the statutes the original cause of action and the recovery were predicated upon, for if the funds were recovered under the Federal statute, they must be distributed according to the terms of that statute (*Taylor* v. *Taylor,* 232 U. S. 362); and if under one of the statutes of this State, the amount recovered must be distributed according to the statute which authorizes the recovery.

The original complaint and the judgment of the court thereon were incorporated in the complaint in the present action. The complaint in the former action did not contain an allegation to the effect that Murphy was engaged in interstate commerce at the time of his injury, nor did it contain any allegation indicating that he was not so engaged. The complaint may be treated as silent on that subject. The action was brought by the personal representative of the decedent, which was authorized by either of the three statutes now under consideration, and under the complaint as unamended there might have been a recovery either under the State statutes or the Federal statute, according to the facts disclosed in the proof. *St. L. I. M. & S. Ry. Co.* v. *Hesterly,* 98 Ark. 240.

The facts of the case, as recited in the answer of appellant, which is conceded to state the facts correctly, are that Murphy was engaged in interstate commerce at the time of his injury. But, even accepting the allegations of the original complaint itself as denoting the character of the accident, it was one not based on §§ 1074 and 1075, Crawford & Moses' Digest, but it was

based on the more recent statute referred to above. Crawford & Moses' Digest, § 7138, *et seq.*

The later statute, just mentioned, related to what we have denominated as railroad hazards, and we have construed the statute to include "every employee who, when injured, was performing some work in the line of his duty, directly connected with and incident to the use and operation of a railroad." *St. L. I. M. & S. Ry. Co.* v. *Ingram,* 118 Ark. 377; *St. L. I. M. & S. Ry. Co.* v. *Wiseman,* 119 Ark. 477.

It was alleged in the original complaint that Murphy, at the time of his injury, was in the employ of the defendant, "not operating any engine, but on said date was assisting Engineer Schultz to disconnect engine 2395 at Cotter, and on account of defects in said engine the radiator rod was blown out of said engine, striking said Murphy in the back of the head, breaking his skull," etc.

This allegation brings the cause of action within the last statute referred to as interpreted by the cases cited above. It is clear, therefore, that the other statute of this State (the one patterned after Lord Campbell's Act) has no application, and we need not determine what the distribution would be under that statute.

The act of 1911, *supra,* contains a provision in the last section to the effect that the act shall not be held "to limit the duty of common carriers by railroad, or impair the rights of their employees in the existing laws of the State." This provision may be conceded to show an intention on the part of the Legislature not to repeal any statute then in existence except those repugnant to the terms of the later statute, but that statute necessarily operated as a repeal of any other statute conferring a right of action under the facts set forth in this statute. The two statutes are inconsistent to that extent, and the last one repeals the first to that extent. This is necessarily so, for the remedies of the two statutes are entirely different and for the benefit of different persons.

It is unnecessary to determine whether the original recovery should be treated as one under the Federal statute, or as one under the statute of this State last mentioned. It might have been under either of those statutes, according to the fact whether or not the employee was engaged in interstate commerce.

The Federal statutes have been interpreted by the Supreme Court of the United States to authorize a distribution of the amount recovered only to the next of kin mentioned who are injured by the wrongful or negligent act. That court has repeatedly held that the statute was intended to afford compensation only to those who sustain injuries resulting from the death of the decedent, and that the distribution must be limited to that class. *Michigan Central R. Co.* v. *Vreeland,* 227 U. S. 59; *Gulf, C. & S. F. Ry. Co.* v. *McGinnis,* 228 U. S. 173; *Taylor* v. *Taylor, supra; Central of Vermont R. R.* v. *White,* 238 U. S. 507.

That part of our statute which describes the persons on whom the right of action is conferred, and the beneficiaries thereunder, is in almost the same language as that of the Federal statute. It provides that common carriers by railroad "shall be liable for all damages to any person suffering injury while he is employed by such carrier, or, in the case of the death of such employee, to his or her personal or legal representative, for the benefit of the surviving widow or husband and children of such employee; if none, then to such employee's parents; if none, then to the next of kin of such employee, for such injury or death resulting in whole or in part from the negligence," etc. Crawford & Moses' Digest, sec. 7138. There are one or two slight changes in the statute from the language employed in the Federal statute, but it is evident that the writer of our statute had before him the Federal statute and used it as a model. When the whole statute is read together, it is clear that it was intended to cover the same subject as that covered by the Federal statute so far as it affects causes of action of the kind

described other than while the employee was engaged in interstate commerce.

The more explicit interpretation of the Federal statute by the Supreme Court of the United States, beginning with the Vreeland case, *supra,* came after the adoption of the statute by the lawmakers of this State, and the doctrine of borrowed interpretation cannot, perhaps, be invoked, but we have no doubt of the correctness of the subsequent interpretation of the Federal statute, and our statute is, of course, subject to the same interpretation. That statute does not contain any express provision or direction with reference to the distribution of the fund, as is the case with respect to our statute patterned after Lord Campbell's Act. But it does clearly appear from the statute that the recovery is for the benefit of the person or class of persons who suffer injury on account of the death caused by the wrongful act, and, in the absence of an express provision to the contrary in the statute itself, the only reasonable interpretation is that the participation in the distribution of the fund must be limited to those who are to be compensated for the injury.

We are therefore of the opinion that under this statute appellee is not entitled to participate in the distribution of the fund in controversy, for it is undisputed that she sustained no pecuniary injury by the wrongful act which caused the death of her father. According to the agreed statement of facts, she was not dependent on her father, and she was not receiving any contributions from him or expecting any, but on the contrary she was married and living with her husband, apart from her father.

The judgment is therefore reversed, and the cause is dismissed.