FAULKNER *v.* FAULKNER.

4-2910

Opinion delivered March 6, 1933.

*T. H. Humphreys, Jr., Fred A. Isgrig* and *Harry Robinson,* for appellant.

*Tom W. Campbell,* for appellee.

BUTLER, J. Nelson Faulkner, a locomotive engineer in the employ of the Missouri Pacific Railway Company, suffered an injury while in the discharge of his duties, from which injury he died.

He left surviving him Lillian Faulkner, his widow, aged 38 years, and two children, a son born to him and his wife, Lillian Faulkner, who was at the time of his father's death 20 years, 3 months and 24 days old. The other child was an adopted son, William August Faulkner, aged 22 months when the father died.

The deceased had made a will, which was filed for and admitted to probate, in which the said Lillian Faulkner was named executrix. Thereafter she, as such executrix, filed suit against the Missouri Pacific Railway for the benefit of the estate and for herself as widow and the next of kin. On December 24, 1929, judgment was rendered in the sum of $1,000 for the benefit of the estate and $4,000 for benefit of the widow and next of kin.

In January, 1932, Nelson Edward Faulkner brought suit alleging the death of his father, the recovery of the aforesaid judgment, and that at the time of his father's death he was a minor residing with, and dependent upon the earnings of, his said father for support. He further alleged that the defendant, Lillian Faulkner, had collected the sums adjudged; that he was entitled to one-third of the sum recovered for benefit of the widow and next of kin, but which had been kept or appropriated by the defendant for her own use. Judgment was prayed for $1,333.33 with interest at 6 per cent. from December 24, 1929, the date the defendant was alleged to have received the money on the judgment. To this complaint the defendant made answer denying that the plaintiff had been supported by or was dependent upon the earnings of his father or that he was entitled to share in the said recovery, and, by way of cross-complaint, alleged that the plaintiff was indebted to her in the sum of $1,306.25, for which she prayed judgment.

On these issues the case proceeded to trial, at which testimony was introduced tending to sustain the allegation that plaintiff lived with and was supported by, and was dependent upon, the earnings of his father, and to refute the allegation of the cross-complaint. The testi mony on the part of the defendant sharply controverted that of the plaintiff and tended to sustain the allegation of her answer and the averments of her cross-complaint. On that state of testimony the court instructed the jury to find for the plaintiff the sum sued for, less whatever, if any, the jury might find to be due defendant on her cross-complaint, and refused the request of the defendant to instruct the jury as follows:

1. "You are instructed that, if you find from the evidence in this case that Nelson Edward Faulkner was not dependent upon his father, the deceased, for support, and that he sustained no pecuniary injury by the negligent killing of his father, then Nelson Edward Faulkner would not be entitled to recover, and your verdict will be for the defendant on his cause of action."

2. "If you find from the evidence in this case that Nelson Edward Faulkner was dependent upon his father for support, then his proportionate part of the recovery would be for the remaining time of his minority as compared with the expectancy of his mother, the defendant, and William August Faulkner, his foster brother."

There was a verdict and judgment for the plaintiff in the sum of $500 from which defendant has appealed and argues error of the trial court in its instruction given for the plaintiff and in its refusal to instruct the jury as requested by her.

The court evidently adopted the theory which appellee here maintained, *viz.*, that the suit of Mrs. Lillian Faulkner was instituted under § 1074 of Crawford & Moses' Digest, and that the sum recovered should be distributed as provided by § 1075 of the Digest which provides that the amount recovered for the benefit of the widow and next of kin be distributed to such widow and kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and by § 3535, *Id.*, which provides for an allotment of one-third of the personal estate to the widow as her dower; and by § 3471, *Id.*, which provides for the distribution of the estate of a deceased person.

The act of the General Assembly, approved March 6, 1883, of which §§ 1074 and 1075, *Id.*, is a part, embodied certain provisions of an English statute known as Lord Campbell's Act, and applies in cases where a recovery may be had for an actionable injury resulting in death, regardless of the agency by which the injury was inflicted and gives the right of action to the personal representative of any person whose death has been caused by the

wrongful act of any other. *Davis* v. *Railway,* 53 Ark. 117, 13 S. W. 801.

The act did not limit a recovery for the death of one of a certain class by another of a certain other class, but applied equally to all persons alike, both as to those for whose death a recovery was sought and to those through whose fault the death was occasioned. Under its provisions suit might be brought for the death of a railway employee against the railway company responsible therefor and thus remained the law until the General Assembly, by an act passed at its 1911 session, now § 7138 *et seq.* of Crawford & Moses' Digest, provided for liability of common carriers by railroad for damages for the death of its employees resulting from its negligence. It is the contention of the appellant that this suit was authorized and prosecuted under the latter act, and that it is to be, and is, determined by the allegations of the complaint.

The Federal Employers' Liability Act of April 22, 1908, applies only to railroad carriers and to those suffering injury resulting from the negligence of such carrier while in their employ and engaged in the prosecution of their work. The act of March 6, 1911 (§ 7138 *et seq.*) was modeled upon the Federal statute and was construed in the case of *K. C. & M. Ry. Co.* v. *Huff,* 116 Ark. 461, 173 S. W. 419, as not applicable to the case of every servant of a railroad company injured when he was performing his duty as such, and in *St. L., I. M. & S. R. Co.* v. *Ingram,* 118 Ark. 377, 176 S. W. 692, following the decisions of other states construing similar acts, it was held that our statute was designed for the exclusive benefit of those who, in the course of their employment, are exposed to dangers peculiar and incident to the use and operation of engines and trains and to injuries occasioned by these instrumentalities.

In *St. L., I. M. & S. R. Co.* v. *Wiseman,* 119 Ark. 477, 177 S. W. 1139, following and approving the doctrine announced in the two cases above mentioned, the dangers enumerated therein were designated as "railroad hazards" which the court said "are those peculiar dan-

gers to which employees are exposed while they are engaged in work connected with, and necessary to, the operation and running of trains.'' The facts in that case, in the opinion of the trial court, brought it within the statute (§ 7138 *et seq*). In overruling the trial court, this court said: ''It would be a difficult task to determine in advance and to define specifically what cases may fall within the purview of the statute. Each case will depend upon its own peculiar facts as developed. But the undisputed facts of the present record show that Wiseman at the time of his injury was engaged in the work of repairing a car in the shops at McGehee. This work in no manner exposed him to those peculiar hazards which are incident to, and connected with, the physical use and operation of a line of railroad, and the work in which he was engaged did not bring him within the protection of act No. 88 of the Acts of 1911, as construed by us in *Ry. Co.* v. *Ingram, supra.*''

The doctrine of those cases was applied by the court in the case of *Murphy* v. *Province,* 153 Ark. 240, 240 S. W. 421, relied upon by appellant. In that case a recovery was obtained on a suit by the executrix against the railroad company for the death of her testator, one of its employees, by reason of the negligence of the railroad company. A married daughter brought suit against the executrix to recover a share of the amount recovered on the ground that the ''recovery of the funds in controversy was secured in an action under the statute of this State which is generally referred to as having been patterned after Lord Campbell's Act (Crawford & Moses' Digest, §§ 1074, 1075), which provides that the recovery secured thereunder 'shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate'.''

That suit was resisted by the executrix, her contention being that the judgment for the death of her testator was had either under the Federal Employers' Liability

Act or under the statute, § 7138 *et seq., supra,* which act she claimed provided a different method of distribution from that contended for by the plaintiff. This is precisely the issue presented in the instant case.

The court, in that case, found it unnecessary to determine whether the original recovery should be treated as one under the Federal statute or under § 7138 *et seq.,* of the Digest, holding that it might be under either according to the fact whether or not the employee was engaged in interstate commerce and noted that the complaint in the original action was silent on that subject. The court held against the contention of the plaintiff (appellee) and that, under the allegations of the complaint in the original case as "denoting the character of the accident," the case stated was not based on §§ 1074 and 1075, *supra,* as claimed by the plaintiff, but on the latter statute, § 7138 *et seq.,* as contended for by the executrix. In that connection the court said: "It was alleged in the original complaint that Murphy, at the time of his injury, was in the employ of the defendant, 'not operating any engine, but on said date was assisting engineer Schultz to disconnect engine 2395 at Cotter, and, on account of defects in said engine, the radiator rod was blown out of said engine, striking said Murphy in the back of the head, breaking his skull,' etc. This allegation brings the cause of action within the last statute referred to as interpreted by the cases cited above. It is clear therefore that the other statute of this State (the one patterned after Lord Campbell's Act) has no application, and we need not determine what the distribution would be under that statute."

The court, continuing, observes that our statute with unimportant variations is the same as the Federal statute, and that it is clear that it was intended to cover the same subjects included in that, so far as it affects causes of actions of the kind described other than those while the employee was engaged in interstate commerce. The court notes the construction placed by Federal courts on the Federal statute and says: "Our statute is, of course,

subject to the same interpretation. That statute (§ 7138 *et seq.*) does not contain any express provision or direction with reference to the distribution of the fund, as is the case with respect to our statute patterned after Lord Campbell's Act. But it does clearly appear from the statute that the recovery is for the benefit of the person or class of persons who suffer injury on account of the death caused by the wrongful act, and, in the absence of an express provision to the contrary in the statute itself, the only reasonable interpretation is that the participation in the distribution of the fund must be limited to those who are to be compensated for the injury.''

We have seen that the contention of the appellant and the appellee in the instant case as to the statute under which the original suit was brought are the same as those of the parties in *Murphy* v. *Province, supra.*

In this case the complaint alleged that ''the deceased was in the employ of the defendant as a locomotive engineer, and on said date, while he was in the exercise of due care for his own safety, he was attempting to alight from his engine at Hoxie, Arkansas, and, on account of the negligent and careless handling of the engine by the fireman who was running the engine at the time, and on account of the defective condition of the steps and handholds on the cab of said engine, said deceased was caused to fall to the ground, suffering severe injuries * * * and finally died.''

A comparison of the complaint last quoted with that in the case of *Murphy* v. *Province, supra,* discloses that in each the person for whose death suit was brought was an employee of a railroad company engaged at the time of his injury in work for his employer ''directly connected with, and incident to, the operation of a railroad,'' and neither complaint contains any allegation indicating whether or not the employees were engaged in interstate commerce. This comparison shows beyond question that the complaints are identical in legal effect, and that the conclusion reached in *Murphy* v. *Province, supra,* controls in this case.

We do not overlook the argument of learned counsel for the appellee (1) that when § 1075 is considered as a whole there is no conflict between that section and § 7138, as that section has been construed by this court, or (2) that by the express provision of that statute § 1075 has not been repealed; nor (3). do we disregard the contention that, as § 1075 contains the only directions for distribution of the amount recovered for wrongful death, therefore "when, in any case for wrongful death in this State, it has been determined which of the children are entitled to share in the damages recovered for the wrongful death, the provisions of said § 1075 furnish the only legal guide for the division of such damages among the widow and those of the children who are entitled to any share in such damages"; or (4) that this contention is sustained by the recent case of *Adams* v. *Shell*, 182 Ark. 959, 33 S. W. (2d) 1107, in which it was decided that the amount of recovery should be distributed, after the widow's interest was deducted, among the next of kin, share and share alike, as provided for in § 1075, *supra*.

The first three propositions advanced are answered by the court in *Murphy* v. *Province, supra*, where it is held that there are inconsistencies in the two statutes, and, where there are such, the later statute repeals the former, and that, while there is not any express direction for the distribution of the fund as in the statute patterned after Lord Campbell's Act, that act has no application in cases such as this. This last statement is made by the court in a paragraph quoted *supra*. With reference to the proposition that the statutes are inconsistent in certain particulars and when inconsistent the former is to that extent repealed by the latter, the court said:

"The act of 1911, *supra*, contains a provision in the last section to the effect that the act shall not be held 'to limit the duty of common carriers by railroad, or impair the rights of their employees in the existing laws of the State.' This provision may be conceded to show an intention on the part of the Legislature not to repeal any statute then in existence except those repugnant to the

terms of the later statute, but that statute necessarily operated as a repeal of any other statute conferring a right of action under the facts set forth in this statute. The two statutes are inconsistent to that extent, and the last one repeals the first to that extent. This is necessarily so, for the remedies of the two statutes are entirely different and for the benefit of different persons."

The last point raised by the appellee noted above (4) that their position is sustained by the opinion in *Adams* v. *Shell, supra,* because of the claim that the applicable law in that case was § 7144, a statute which, with the exception of the word 'corporation' being substituted for the words 'common carriers by railroad' found in § 7138, is the same, and in that case (as it is claimed) this court held that a fund derived from a judgment for wrongful death should be distributed, one-third to the widow and one-third each to the two children, and that therefore in the case at bar a similar order should be made and that the trial court correctly so held.

An examination of *Adams* v. *Shell, supra,* will disclose that the propositions advanced find no support in that case. In the first place, that was not a suit against a common carrier by railroad for the wrongful death of one of its employees, but an action for damages against the International Paper Company, and, in discussing the question of the distribution of the fund arising from moneys obtained in satisfaction of the judgment, the court assumed, whether correctly or not, that the suit for the wrongful death was under §§ 1074 and 1075, and not under § 7144, as counsel suggests. This is apparent because in the reference in the opinion to the manner of the distribution of the fund the court said: "Under § 1075 of the Digest, the personal representative of a deceased person may bring an action for the wrongful death of said decedent, and the amount recovered shall be for the exclusive benefit of the widow and next of kin of such deceased person and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by

persons dying intestate. Thus, it will be seen that it is the duty of the administrator to bring the suit as provided by the statute, and, in the event of a recovery, to distribute the amount recovered according to the provisions of the statute which covers the distribution of personal property. The damages are recovered in the name of the personal representative of the deceased, but do not become assets of the estate. The relation of the administrator to the fund when recovered is not that of the representative of the deceased, but of a trustee for the benefit of the widow and next of kin; and the suit is wholly for their benefit."

Further than holding that the distribution of the fund obtained by a cause of action, prescribed by § 7138, was not to be distributed as prescribed by § 1075, the court, in *Murphy* v. *Province, supra,* did not indicate how distribution should be made, as that was unnecessary because the plaintiff, having sustained no pecuniary injury, was not entitled to any part of the fund.

The statute as interpreted makes the pecuniary injury the basis of damage and of the participation in any judgment recovery therefor. The dependence of the plaintiff and whether or not the deceased had contributed to his support are merely evidentiary facts from which, with the other circumstances in the case, the question of the pecuniary injury and its extent is to be ascertained. The distribution not having been prescribed by the governing statute (§ 7138) and the mode named in § 1075 not being applicable, it becomes the duty of the court to formulate a rule of distribution consonant with reason and the principles of sound justice.

It is not difficult to perceive how the rule provided for in § 1075 or how any other fixed and arbitrary rule might be the occasion of an unfair division by which one in no sense in need and in every sense unworthy and who had received and had no right to expect any contribution would share equally with those entirely dependent and most worthy and who had, in the lifetime of the deceased, been the principal beneficiaries of his bounty and

had the right to expect that this would continue. Many cases might be imagined illustrative of how that rule might work, but the mere statement of the rule suggests to the mind circumstances which might, and frequently do, arise where an equal distribution among the next of kin would be most unreasonable and unjust. Therefore the rule to be adopted should be flexible to fit the circumstances of each case, which should determine who should participate in the distribution and to what extent.

The statute itself, as construed by this court, indicates the proper method to be adopted. It is clear that simply because one is among the number of next of kin does not entitle him to recover damages or to share with the others, but it must appear that some pecuniary injury to him must have been suffered. If then the injury suffered is the basis of the recovery, the extent of that injury as compared with others of the next of kin ought to be the measure by which his proportionate share in the damages recovered should be ascertained. In many cases that could not be determined by any single fact but only from a consideration of all the attendant circumstances.

The rule evoked by appellant's requested instruction No. 2 is unsound because it leaves out of consideration the pecuniary injury suffered and makes the ages of the respective parties the only measure of the extent of the injury. It might be, and it sometimes is, the case that an adult child may be more dependent than a minor and have received and may have reason to expect much greater contribution than the minor child. The fairest rule, it appears to us, is that it should be for the jury to say from a consideration of all the facts and circumstances whether the plaintiff in a given case had suffered pecuniary injury, and, if so, what was its extent as compared with the others entitled to share in the fund—that, also, to be determined from a consideration of all the circumstances in the case, and from this his proportionate share will be fixed.

In the instant case counsel for the appellee call attention to the allegation in the complaint of the executrix filed in the original suit, to-wit: "That at the time of his death the said Nelson Faulkner was in good health, aged about forty-seven, and earning large sums of money, practically all of which he was contributing to the support of his, your executrix, and two children, Nelson Edward, aged twenty-one, and William August, aged three, the latter named being his survivors."

Counsel for appellee then calls attention to the judgment based upon this allegation, which was "for the benefit of the widow and next of kin of said deceased." We are inclined to the view of counsel that this allegation precludes the appellant in the instant case from denying the right of appellee to share in the fund and that the cases cited by him support his contention. *Less v. Less,* 158 Ark. 255, 249 S. W. 583; 15 R. C. L., p. 1012, § 485; *Westfield Gas Co.* v. *Noblesville Gravel Road Co.,* 41 N. E. 955; *Parkhurst* v. *Berdell,* 18 N. E. 123. Therefore the only question which would be before the court would be the proportionate part of the fund due the appellee to be ascertained in the manner we have pointed out, that to be diminished by whatever it might appear was due appellant on her cross-complaint.

The judgment of the court below is therefore reversed, and the cause is remanded for a new trial.