DICKEN v. MISSOURI PACIFIC RAILROAD COMPANY.

4-3378

Opinion delivered March 12, 1934.

*Haynie, Parks & Westfall*, for appellant.

*Henry Donham* and *Mahony & Yocum*, for appellees.

JOHNSON, C. J. To compensate an injury, which resulted in death to Chester Dicken, this suit was instituted by appellant, Mattie Dicken, widow of deceased, against appellees, Missouri Pacific Railroad Company and the Standard Gravel Company, in the Nevada Circuit Court.

In effect, the complaint alleged that the Standard Gravel Company is a domestic corporation, and the Missouri Pacific Railroad Company is a foreign railway corporation, authorized to do business in this State. That on and prior to said second day of September, 1933, plaintiff's husband, Chester Dicken, was in the employ of defendant, Standard Gravel Company, engaged in helping to load on the cars of defendant, Missouri Pacific Railroad Company sand and gravel to be transported over the lines of railroad owned and operated by both of said defendants, as heretofore alleged. That, after two of said cars were loaded with sand and gravel, the engineers in charge of said locomotive of defendants was ordered by defendant to move said loaded cars from said gravel plant over said short line of railroad, to a point near the track of the defendant, Missouri Pacific Railroad Company, where same was to be unloaded, to be used for repairing the track or roadbed of said short line of railroad. That it was the duty of all of the employees of defendant, Standard Gravel Company, including Chester Dicken, to go upon said gravel cars and ride same to the point where the sand and gravel was to be unloaded for the purpose aforesaid.

That one of said cars owned by defendant, Missouri Pacific Railroad Company, then and there being transported over said short line of railroad, and which was loaded with sand and gravel, was equipped with a trap door or flooring controlled by certain cogs, chains and

gearing which held the bed of the car intact, until ready to be dumped by releasing the dog or a trigger which would release the bed of the car and permit the sand and gravel to be discharged upon the track or roadbed beneath.

That, shortly after said locomotives and cars were placed in motion, and while same were being transported to the point on said short line of railroad where same were to be unloaded as aforesaid, the trap door or bed of said car loaded with sand and gravel suddenly collapsed and fell from its position, permitting the load of sand and gravel, upon which said Chester Dicken was riding, to fall through upon the track, carrying with it the said Chester Dicken, and causing him to be run over by said gravel car and killed.

The prayer was for compensation in the sum of $3,000.

Appellees answered the complaint and affirmatively alleged a defect of parties plaintiff in that appellant was without authority under the law to prosecute or maintain the suit. After the filing of appellees' answers, appellant amended her complaint by alleging that no letters of administration had been issued upon the estate of her deceased husband, and that the deceased left no children or father or mother surviving; that deceased left no collateral heirs surviving him, except one half-brother, Isaiah Dicken, and one half-sister, Arminta Dicken Houston. Thereupon the half-brother and sister of deceased intervened in said cause and were made parties plaintiff.

At the conclusion of appellants' evidence, a verdict was directed by the trial court in favor of appellees, and against appellants, and a judgment was accordingly entered, from which this appeal is prosecuted.

Because of the views hereinafter expressed, we deem it unnecessary to detail the testimony introduced upon the trial.

The decisive issue is: Can appellants, the widow and heirs at law of Chester Dicken, maintain this suit? Or does the alleged cause of action rest exclusively in the personal representative of the deceased? In determining.

this question, it must be remembered that at common law this cause of action, as alleged by appellants, did not survive the deceased, therefore the survival of said cause of action rests solely upon statutory law.

The first statutory law in this State on the subject here under consideration was enacted by the Legislature of 1883 and now appears as §§ 1074 and 1075, Crawford & Moses' Digest.

Section 1075 provides: ''Every such action shall be brought by, and in the name of, the personal representatives of such deceased person, and, if there be no personal representative, then the same may be brought by the heirs at law of such deceased person, etc.''

Under this provision of the statute, a suit arising under § 1074, Crawford & Moses' Digest, must be prosecuted and maintained by the personal representative of the deceased, if one there be, and, if none, the suit may be maintained by the widow and heirs at law. *St. L., I. M. & S. Ry. Co.* v. *Corman*, 92 Ark. 102, 122 S. W. 116, and *Southwestern Gas & Electric Co.* v. *Godfrey*, 178 Ark. 103, 10 S. W. (2d) 894.

The above sections of the statute remained unimpaired and not amended up to and until 1911, at which time § 7138, Crawford & Moses' Digest, was enacted. This section of the statute was construed in *Murphy* v. *Province*, 153 Ark. 240, 240 S. W. 421, and we there held, quoting from the fourth headnote:

''Crawford & Moses' Digest, § 7138 *et seq.*, known as the Railroad Hazards Act, repealed the Lord Campbell's Act, so far as the two acts were necessarily inconsistent, though the former act provides that it shall not be held to limit the duty of common carriers by railroads or impair the rights of their employees in the existing laws of the State.''

In the more recent case of *Faulkner* v. *Faulkner*, 186 Ark. 1082, 57 S. W. (2d) 818, quoting from the third headnote, we held: ''The railroad hazards act (Crawford & Moses' Digest, § 7138 *et seq.*) repealed the general death statute in actions arising under the former act.''

Thus it appears that, in all cases which arise or are prosecuted under the Railroad Hazards Act of 1911, an

exclusive remedy is afforded, and §§ 1074 and 1075 of Crawford & Moses' Digest are impliedly repealed to the extent of the later act.

Thus the law stood until 1913, when the Legislature enacted act 175 of 1913, a part of which now appears as § 7144, Crawford & Moses' Digest, which provides:

"Every corporation, except while engaged in interstate commerce, shall be liable in damages to any person suffering injury while he is employed by such corporation, or, in case of death of such employee, to his or her personal representative for the benefit of the surviving widow or husband and children of such employee, etc."

It definitely appears that the section of the statute just quoted was patterned after the Federal Employers' Liability Act. USCA, title 45, § 51, therefore the rules of construction promulgated by the Federal courts should be given great weight in construing the provisions thereof.

The Supreme Court of the United States has construed the Federal Employers' Liability Act to mean that all actions arising thereunder must be brought, prosecuted and maintained by the personal representative of the deceased. *M., K. & T. Ry. Co.* v. *Wulf,* 226 U. S. 570, 33 S. Ct. 135; *St. Louis-San Francisco Ry. Co.* v. *Maude Seale,* 229 U. S. 156, 33 S. Ct. 651.

Since § 7144, Crawford & Moses' Digest, is not dissimilar to § 51, title 45, USCA, we feel constrained and impelled to follow the decisions of the Supreme Court of the United States, and hold that all actions which arise or are prosecuted under act 175 of 1913 by an employee or his widow and heirs at law and against a corporation, which is not engaged in interstate commerce, must be instituted, prosecuted and maintained by the personal representative of the deceased.

We are not unmindful of the long-established doctrine of this court that repeals by implication are not favored. The converse of this rule is quite as well established, to the effect that, where two legislative acts relating to the same subject are necessarily repugnant to, and in conflict with, each other, the later controls, and, to the extent of such repugnancy or conflict, repeals the

earlier act, whether expressly so declared or not. *Hickey* v. *State,* 114 Ark. 526, 170 S. W. 562; *Coats* v. *Hill,* 41 Ark. 149; *Chicago, R. I. & P. Rd. Co.* v. *McElroy,* 92 Ark. 600, 123 S. W. 771; *City of DeQueen* v. *Fenton,* 100 Ark. 504, 140 S. W. 716.

Our conclusion is therefore that all tort actions arising under the laws of this State, for the benefit of deceased employee's widows and heirs at law and against corporations, other than corporations engaged in interstate commerce, must be instituted, prosecuted and maintained by the personal representative of such deceased employee, and to this extent § 1075, Crawford & Moses' Digest, is impliedly repealed by § 7144 of Crawford & Moses' Digest.

Appellant insists that we decided this contention otherwise in the Godfrey case, *supra.* Not so. The effect of the decision in the Godfrey case is that it is not prejudicial error to join the heirs at law with the personal representative in the prosecution of such suits.

Appellant also contends that we decided this question adversely in the case of *Thompson* v. *Southern Lumber Co.,* 113 Ark. 380, 168 S. W. 1068. This case was decided on June 15, 1914, and the statement of facts therein indicates that a prior suit had been litigated between the parties over the same subject-matter. The subject-matter over which the litigation arose was an injury inflicted in 1910. Just when the first suit was instituted, whether prior to or after the passage and approval of act 175 of 1913, does not appear. However, since the act of 1913 is not referred to or discussed in the opinion, we conclude that the Thompson suits were instituted prior to the passage and approval of said act. At any rate, the question here under consideration was not presented, discussed or decided by this court in the case referred to.

It follows from what we have said that appellants have not the legal capacity to institute, prosecute or maintain this suit against appellee, Standard Gravel Company, and the trial court committed no error in directing a verdict in its behalf.

It is not seriously contended that any liability is shown against appellee, Missouri Pacific Railroad Com-

pany. The uncontradicted testimony shows that the deceased, Chester Dicken, was in the employ of the Standard Gravel Company, which company had no connection, directly or indirectly, with the railroad company. The only circumstances in evidence tending to connect the Missouri Pacific Railroad Company with the alleged injury to the deceased was that the gravel car, which ran over and upon the deceased, was borrowed from the railroad company by the gravel company. This circumstance is entirely insufficient to establish liability against the railroad company, and the trial court was correct in directing the jury to return a verdict in its favor.

No error appearing, the judgment is affirmed.