MOSELEY *v.* BEARD.

4-6625                                                 158 S. W. 2d 917

Opinion delivered February 9, 1942.

*J. H. Lookadoo,* for appellant.

*Joseph Callaway,* for appellee.

GREENHAW, J. O. C. Moseley, who had been employed by Missouri Pacific Railroad Company for about 28 years, was killed in the course of his employment in May, 1937. He was survived by his widow, Mary Ann Moseley, the appellant herein, and by three children: Willie Clint Moseley, Juanita Moseley and the appellee herein, Dora Lee Beard (Mrs. Roy Beard).

Mary Ann Moseley was appointed administratrix of the estate of her deceased husband, and, as a result of negotiations with Missouri Pacific Railroad Company, a friendly suit was filed by her against the railroad company in the Pulaski circuit court seeking to recover damages in the sum of $17,500 for the benefit of the widow and next of kin of the deceased, and $500 for the benefit of deceased's estate. Judgment was accordingly entered in June, 1938, for the amounts sued for, and $18,000 was paid to Mrs. Moseley at that time. Appellant retained the entire $17,500. The evidence shows that at the time of the death of O. C. Moseley appellee and Willie Clint were of legal age and married. Neither lived with their mother.

Juanita, a minor of 15 years at the time of her father's death, lived with her mother.

After collecting this money, appellant used part of it to purchase a bakery, and invested in government bonds.

After waiting more than two years, appellee requested that her mother pay the proportion due her from money received as a result of the judgment; and this appellant declined to do. Thereupon appellee filed this suit against her mother.

Appellee alleged that appellant as trustee for the widow and next of kin of the deceased had received the item of $17,500; that she, as widow, was entitled to a third and that plaintiff, being one of the three children, was entitled to $3,888.89, less $215 which appellee admitted she owed her mother. Appellee further alleged that appellant had used a large part of the trust fund in purchasing a bakery, and that appellee was entitled to have a lien declared as security for the judgment sought therein.

Appellant's answer denied that she as widow was only entitled to a third of $17,500, and denied that plaintiff was entitled to a third of the remainder. Further answering, appellant alleged that plaintiff told her she did not want any of this money and was *giving* appellant all of her interest, to be used as sustenance and for rearing and educating the other children. Appellant further alleged that she had given appellee $2,000 in cash— $1,000 on each of two occasions—and had given her other money; that she had paid bills for her and had otherwise looked after plaintiff's financial needs, the aggregate amount of these expenditures and payments exceeding the amount plaintiff would have been entitled to receive.

A number of witnesses gave evidence. Appellee testified that her mother had not paid her anything from the item of $17,500. She stated that the only money received was $300 borrowed from her mother, and $85 of this had been repaid. Appellee had no agreement with her mother to give the latter her interest, and there was no family conference in which it was agreed that she and

her brother and sister would give their interests in the money obtained from the railroad company to their mother.

Appellant testified that appellee agreed to give appellant her part of this money, and that her other two children did likewise. This testimony was corroborated by Juanita and Willie Clint. Appellant further testified that in July, 1938, on a trip with appellee and Juanita to visit Willie Clint in Port Arthur, Texas, she (appellant) carried considerable money on her person, and while at the home of her son in Texas she gave appellee $1,000 in 10- and 20-dollar bills. This testimony was substantiated by her son and other daughter, but vigorously denied by appellee.

Appellant further testified that in September, 1938, while at Gurdon, she gave appellee the additional $1,000 heretofore mentioned, payment being in 10- and 20-dollar bills. This testimony was substantiated by her daughter, Juanita, but was emphatically denied by appellee. The appellant did not take receipts and offered no writing in support of her testimony that she gave appellee $1,000 on two different occasions.

She testified to having given appellee other small sums; that she bought her numerous articles of personal apparel; that she spent large sums in paying her daughter's bills, and that the aggregate of such payments exceeded the amount claimed by appellee in her suit; hence, appellee was not entitled to recover even if no agreement had been entered into whereby the appellee gave to the appellant her interest in the money. This was denied by appellee.

Appellant's father, M. G. Morton, grandfather of appellee, testified that he spoke to appellant about giving the children $1,000 each when she got the money, "to get them started off and help them," and that appellant said she was not going to give them anything. He further testified that his wife, the mother of appellant, discussed this with appellant, and that appellant disclaimed an intention to make the payments.

Herbert Blanton, the father-in-law of Willie Clint Moseley, testified that appellant told him that "some people felt that she should divide the money," but that she was capable of taking care of it *for* the children.

L. B. Young testified that he worked at the City Bakery in Gurdon for a number of years, and was working there when Mrs. Moseley bought the bakery. He heard the appellant say: "I am not putting out anything to Dora Lee or Willie Clint. Everything is going to Juanita at my death."

Thomas J. Tarpley testified that before suit was filed he had heard appellant say that she would spend every penny before giving Dora Lee anything.

The substance of all controlling testimony has been set out in this opinion. Appellant contends that appellee's interest in the subject-matter of this suit was either waived or released for the purposes and in the manner heretofore set out, and that in fact this constituted a family settlement. It was further contended on behalf of appellant that even if such a settlement were not consummated, still appellee was not entitled to recover for the reason that appellant had paid appellee more than the amount she was entitled to receive.

The lower court held against appellant on both contentions, and found that appellant, as widow, was entitled to a third of $17,500, or $5,833.33, and that appellee, being one of the three next of kin, was entitled to $3,-888.89, which appellant held as trustee; that $215 had been paid to appellee, leaving unpaid a balance of $3,673.89, on which interest should be computed at the rate of six per cent. per annum from June 21, 1938. Total principal and interest amounted to $4,157.35, for which amount judgment was entered and from which is this appeal.

We have concluded that the decree of the lower court is supported by a preponderance of the evidence.

This case was tried upon the theory that suit was filed and judgment obtained against the Missouri Pacific Railroad Company under §§ 1277 and 1278 of Pope's Digest. Section 1278 provides: ". . . the amount re-

covered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; . . ." Evidence responsive to this construction was given, and the decree of the chancery court was based upon this belief. The original brief filed by appellant and the brief of appellee were upon this theory.

In the reply brief, counsel for appellant raised for the first time the contention that the appellee is barred from recovering as an heir and next of kin under § 9124 of Pope's Digest known as the Railroad Hazards Act, and under § 9130. To support this contention appellant in the reply brief cites the cases of *Murphy* v. *Province,* 153 Ark. 240, 240 S. W. 421, and *Faulkner* v. *Faulkner,* 186 Ark. 1082, 57 S. W. 2d 818, as well as other authorities.

Without determining whether the evidence would support this position, it is sufficient to say that the contention was not raised at trial, nor was it argued in this court except in appellant's reply brief. Hence the defense is not available. In *Brown* v. *LeMay,* 101 Ark. 95, 141 S. W. 759, this court said: "The rule is well settled that when a cause is tried in the lower court upon a definite theory, it cannot for the first time be contended in this court that it should have been tried upon a different one."

In *Western Union Telegraph Co.* v. *Freeman,* 121 Ark. 124, 180 S. W. 743, this court said: "It would be manifestly unfair to the trial court to reverse it as for an error in ruling which it did not make or have the opportunity to make. This would be allowing the appellant to hold in reservation masked batteries to be turned loose upon the trial court for the first time on appeal. Such cannot be done." Citing a number of cases.

Finding no error, the decree is affirmed.