Charles D. RAGLAND, Revenue Commissioner, Revenue
Division, Department of Finance and Administration
*v.* MEADOWBROOK COUNTRY CLUB

89-121                                    777 S.W.2d 852

Supreme Court of Arkansas
Opinion delivered October 16, 1989
[Rehearing denied November 13, 1989.*]

_____

*Hays, J., would grant rehearing.

*John H. Theis, Joe Morphew, Philip Raia, Robert L. Jones, William E. Keadle, Ricky L. Pruett*, and *David B. Kaufman*, by: *Cora L. Gentry*, for appellant.

*Sloan, Rubens, Peeples & Coleman*, by: *Gerald A. Coleman* and *Therese H. Green*, for appellee.

JOHN I. PURTLE, Justice. The chancery court upheld the Meadowbrook Country Club in its protest of a tax assessment by the Revenue Division, Department of Finance and Administration, which levied a tax and penalty for failure to include in the taxpayer's gross sales reports a surcharge on food and bar tickets. The Revenue Commissioner brings this appeal from the chancellor's finding that the additional charge was for services and therefore excluded from tax liability under the Gross Receipts Act. He further contends that the chancellor also erred in holding that the appellee met its burden of proof beyond a reasonable doubt. We have determined that the chancellor correctly held that the Revenue Division did not establish that the service charge was a sale as defined by the provisions of the Gross Receipts Act. Therefore, we affirm the action of the trial court in holding that no sales tax was due on the additional charges.

The Revenue Division audited the appellee for the period from December 1, 1981, through November 30, 1984, and

assessed a tax in the amount of $6,204.59 on unreported taxable sales of $145,532.34. The appellee protested the assessment and subsequent administrative ruling and then appealed to the Crittenden County Chancery Court. Reversing the administrative ruling, the chancellor held that the charge was for services and therefore was not taxable as gross receipts.

The appellee, Meadowbrook Country.Club, serves food and drinks to its members on a no-cash basis. Members are billed monthly for food and beverages. A 15 percent gratuity is added to each ticket as a part of the waiters' and waitresses' wages. This gratuity is apportioned among the employees working on the shift at the time the charges were incurred by the members. The members of the country club voted to include the 15 percent surcharge in order to avoid having any money change hands at the time services are rendered. The gratuity became a part of the waiters' and waitresses' remuneration. The guaranteed wages to the employees under this provision are less than the minimum wage, and the employees pay the normal taxes on the total income thus received.

The relevant portions of the Gross Receipts Act are found at Ark. Code Ann. § 26-52-103(a)(3)(A) and (E) (Supp. 1987):

> "Sale" is declared to mean the transfer of either the title or possession, except in the case of leases or rentals, for a valuable consideration of tangible personal property, regardless of the manner, method, instrumentality, or device by which the transfer is accomplished.
>
> . . .
>
> "Sale" shall not include the furnishing or rendering of services except as otherwise provided in this section. . . .

The issue to be determined by this court is whether the additional charge for the waiters and waitresses falls within the provisions of the Gross Receipts Act quoted above.

In *Chandler* v. *Perry-Casa Public Schools*, 286 Ark. 170, 690 S.W.2d 349 (1985), we stated: "The first rule to be applied in statutory construction is to give the words in the statute their usual and ordinary meaning. If there is no ambiguity we give a statute effect just as it reads."

 Simply read, the Gross Receipts Act provides for a tax on the sale, through transfer of title or possession, of tangible personal property; however, the word "sale," as used in the Act, does not include the "furnishing or rendering of services, except as otherwise provided in [the Act.]." Ark. Code Ann. § 26-52-103(a)(3)(E). No other exclusion applies to the present case. Giving the words their plain meaning, it is obvious that services, such as wages for labor performed, are not to be included under the Gross Receipts Act. The chancellor gave the words of the statute their plain meaning when he held that the 15 percent gratutity charge was for services and was not subject to the gross receipts tax.

The appellant relies heavily on *Belvedere Sand & Gravel Co. v. Heath,* 259 Ark. 767, 536 S.W.2d 312 (1976). Belvedere was in the business of selling sand and gravel but did not own delivery vehicles. Hence, when delivery was made by the seller, independent haulers were employed to transport the sand and gravel. The price of the sand and gravel f.o.b. destination necessarily included the hauling charge. The seller collected the hauling charge from the customer along with the bill for sand and gravel. Both items were included on the same ticket, and both were paid at the same time by the purchaser as a part of the same transaction.

Obviously, the cost of the delivery services became an integral part of the sale price in *Belvedere.* The act of sale was not completed until the products were delivered. At the time of sale, the cost of hauling had already been incurred. The Gross Receipts Act declares a "sale" to mean the "transfer of either the title or possession" of the property to be sold. In *Belvedere,* both title and possession were transferred at the point of delivery.

 In the present case, the sale of the commodity had been completed and possession transferred before the 15 percent service charge was added. This charge was approved by the appellee for the convenience of its members and employees. It had nothing whatsoever to do with the transfer of title. The sale had already been completed at the point where the gratuity was added. No part of the surcharge was for food or beverages.

 The appellant argues that the appellee did not prove entitlement to an exemption from the Gross Receipts Act. However, the appellee was not claiming an exemption; rather, it

was claiming exclusion from coverage. The difference between an exemption and exclusion is that an exemption pertains to sales that would be covered were they not specifically exempted from the Act, while exclusion is simply not included in the first place. A different burden of proof at the administrative and trial levels is required when an exemption or exclusion is at issue.

■■ We have many times held that the taxpayer claiming an exemption shoulders the burden of establishing his claim. By the same logic, it follows that the agency claiming the right to collect a tax bears the burden of proving that the tax law applies to the item sought to be taxed.

■ Neither "services," "wages," nor "gratuities" are included as taxable transactions within the meaning of a sale as defined in the Gross Receipts Act. The added charge was distributed to the waiters and waitresses who worked on the shift at the time the charges were added to the members' bills. Therefore, it does not matter whether we call the charge "wages" or "gratuities" as neither are taxable under the Act. The 15 percent added to the members' bills became a part of the hourly or weekly wages of the waiters and waitresses. Their earnings are no more subject to the sales tax then those of any other wage earners. The waiters and waitresses were clearly "furnishing or rendering . . . services." Services are specifically excluded from taxation by the statutory language.

■ The chancellor correctly held that the charge was for services and therefore was not taxable as gross receipts.

Affirmed.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. What the majority overlooks, I respectfully suggest, is that in transactions between the Meadowbrook Country Club and its members the 15 percent add-on, or surcharge, to food purchases is not a "gratuity" (as the majority mislabels it), but is an obligatory part of the purchase. It may *resemble* a gratuity, but the crucial difference is that in the conventional restaurant transaction the gratuity is, as the word implies, *gratuitous*. The customer is free to leave a tip or, if the service is unsatisfactory, no tip at all. In the transaction between the country club and its members, however, the 15 percent

surcharge is mandatory — the members could no more refuse to pay the 15 percent than they could refuse to pay some other part of the total bill. In that rather unique circumstance the surcharge becomes an inseparable part of the transaction and is properly subject to the Arkansas Gross Receipts Act.

It matters not at all that the appellee chooses to allocate the 15 percent to the payment of its labor costs, anymore than if it chose to allocate some percentage of the price of each meal to another cost factor, such as utility, maintenance, insurance, replacement, et cetera, so long as it is a fixed part of the charge. The point is, the member agrees to purchase a meal costing $10.00, plus 15 percent, for a total charge of $11.50 and that is the gross receipt the appellee realizes on the sale.