Richard A. WEISS, Director, Arkansas Department of Finance and Administration *v.* BEST ENTERPRISES, INC.

95-527                                    917 S.W.2d 543

Supreme Court of Arkansas
Opinion delivered March 18, 1996

714

*Joyce Kinkead*, for appellant.

*Deininger Law Firm*, by: *Neil Deininger* and *Reba M. Wingfield*, for appellee.

ROBERT H. DUDLEY, Justice. Best Enterprises, Inc., charges a fee to place its portable toilets at customers' sites. The fee includes charges for pumping, cleaning, sanitization, and waste-disposal services for the toilets. The Department of Finance & Administration audited Best's records, administratively ruled that Best's operation was subject to the gross-receipts tax, and assessed a deficiency. Best paid the assessment, penalty, and interest under protest and filed suit for judicial relief in the chancery court. *See* Ark. Code Ann. § 26-18-406(a)(1) (Repl. 1992). The chancellor ordered the tax, penalty, and interest refunded. We reverse and dismiss.

In its complaint, Best alleged that Ark. Code Ann. § 26-52-103(a)(3)(E) excludes from gross-receipts taxation, with certain exceptions, furnishing or rendering of a service, and that Ark. Code Ann. § 26-52-301(2) exempts sewer services from the gross-receipts tax. The Director answered that Best's lease of portable toilets was not excluded from taxation because the lease was an integral part of the business and, since the lease and the attendant cleaning services were not separated, it contended that the transaction was subject to taxation. The Director additionally answered that Best was not exempt from taxation as a sewer service because Best is not a utility or public service and only those entities are exempt.

The facts, which are largely undisputed, show that Best purchases portable toilets out of state, takes the toilets to its base of operation in Cabot and, from there, delivers the toilets to the customers' sites. After placing a portable toilet on a customer's site, Best provides pumping, cleaning, sanitation, and waste disposal services for the unit. It charges one fixed price for both the use of portable toilets and the attendant services. The fixed price is determined by using a chart that was formulated by Best. The fixed price includes the cost of the toilet and other equipment such as the service truck and chemicals, toilet tissue, gloves, boots, and uniforms; the cost of fuel for its truck and time for travel by service personnel to the site; and the cost of labor. The cost of equipment constitutes about eleven percent of the fixed price, and the cost of toilets amounts to about five percent of the fixed price.

When a customer calls for a portable toilet, Best inquires about the number of people who will use the facility, the location, and the length of time the toilet or toilets will be needed. After receiving the information, Best determines the fixed price by using its chart. The customer signs a written contract. The toilet is delivered and subsequently serviced at least once a week. The frequency of service depends upon the number of people using the toilet. If a toilet is overused, the customer is informed and either frequency of service is increased or the number of toilets is increased, and the fixed price is increased. The customer is billed every four weeks.

Most of the portable toilets are leased to contractors for use at construction sites. A six-month lease would be considered a short lease; some toilets have been on site since 1987. Best will supply a toilet for only one week, but the fixed charge is about the same as for four weeks.

Servicing the toilets includes pumping waste to the truck, recharging the holding tank with chemicals, deodorizing, cleaning, disinfecting, replacing toilet tissue, removing graffiti, and maintenance. The waste is transported by a service truck to Cabot where it is stored in larger tanks until disposed at a municipal waste-water treatment facility.

The chancellor ruled that providing portable toilets to customers did not constitute the rental of tangible personal property, but rather that Best is engaged in providing sewer and sanitation services which are exempt from taxation. We reverse and dismiss.

The Director's first point of appeal is that the chancellor erred in ruling that providing portable toilets did not constitute, in part, the rental of tangible personal property. The point is well taken.

■■ Rentals of tangible personal property are taxable. Ark. Code Ann. § 26-52-103(a)(3)(B) (Repl. 1992). In determining whether a transaction constitutes a lease that is taxable under the Gross Receipts Act, we look to all of the factors involved to determine the true nature of the transaction. *Leathers v. A & B Dirt Movers, Inc.*, 311 Ark. 320, 844 S.W.2d 314 (1992). No specific words are necessary to create a lease, but the words that are used must have the effect of divesting the owner of the right to the possession of his property and, for a consideration, investing the other party with the right to possession for a designated period or at will. *Harbottle* v. *Central Coal & Coke Co.*, 134 Ark. 254, 203 S.W. 1044 (1918). Best's form contract states that it will "supply the sanitation units" and that the customer will "retain absolute and sole control, possession, and custody of the sanitation units and return such units to the contractor at the end of the service period." It further provides that if the toilet is damaged, other than from ordinary wear and tear, the customer is liable for the damages, the customer cannot make alterations or make attachments to the toilets without Best's permission, and the customer will return the toilet to Best at the end of the contract period. One of Best's exhibits introduced at trial was basic industry data published by the School of Business and Public Administration of Howard University. It provides: "As a part of the cost of renting units, the portable sanitation contractor services on a regular basis." One of Best's employees admitted that the customers frequently called the transaction a rental of portable toilets.

■ In summary, Best, for a consideration, divested itself for a period of time of the right to the possession of its portable toilets, and invested the customer with the right of possession of

its property. The transactions fit within the definition of leases, and we hold that they were leases. Similarly, a Tennessee court of appeals recently held that providing portable toilets to customers constituted a lease of toilets. *Essary v. Huddleston*, WL 384985 (Tenn. App. 1995).

The chancellor ruled that Best was not in the business of leasing portable toilets, but rather was a public utility providing sewer services, which are exempt from the gross-receipts tax. The Director also assigns this part of the ruling as error. The assignment has merit for two reasons.

■ First, sanitation services are provided for the portable toilets leased by Best. Manifestly, the leasing of the portable toilets is an integral part of Best's business. Best offered testimony that it would service toilets owned by another company, but it did not deny that it primarily serviced its own toilets. Thus, it cannot be said that Best was solely providing sewer services.

■ Second, it is undisputed that part of the fixed charge is related to the cost of the toilets. Best estimated this to be approximately five percent of the charge. If the charges for the toilets and services had been separately stated, the amount charged for services would not have been taxable. However, since the nontaxable service was included as part of the total consideration received from the rental of the portable toilets, the charge for services constitutes part of the gross proceeds, and the entire proceeds are subject to taxation.

■■ In *Ferguson v. Cook*, 215 Ark. 373, 220 S.W.2d 808 (1949), a monument dealer sought to deduct the cost of labor necessary to make and install monuments from the sales price. We held that the entire sales price was subject to the tax because the statute that is now codified as Ark. Code Ann. § 26-52-103, states in pertinent part:

> "Gross receipts" or "gross proceeds" means the total amount of consideration for the sale of tangible personal property and such services as are herein specifically provided for, whether the consideration is in money or otherwise, *without any deduction on account of the cost of the properties sold, labor service performed, interest paid, losses, or any expenses whatever.*

Ark. Code Ann. § 26-52-103(a)(4) (emphasis added). We concluded that "where one sells an article in the preparation of which for sale he has expended labor, which adds to its value and *was necessary to make it salable*, he must pay the sales tax on the price received, without deduction for the value of the labor performed." *Ferguson* v. *Cook*, 215 Ark. at 376, 220 S.W.2d at 810 (emphasis added).

In *Larey* v. *Dungan-Allen*, 244 Ark. 908, 428 S.W.2d 71 (1968), the appellee taxpayer was a corporation engaged in commercial photography. *Id.* at 908, 428 S.W.2d at 72. The Director sought to tax it under the section of the act that levies the tax under "photography of all kinds." *Id.* The taxpayer argued that eighty-five percent of its revenue was recompense for services because in the course of its business, its employees "frequently [had] long consultations with their patrons about matters such as advertising layouts, promotional planning, material for magazine publication, and other activities going beyond the mere taking and developing of pictures." *Id.* at 909, 428 S.W.2d at 72. One of the principal stockholders testified that taking pictures was "the least of what they [did]." *Id.* The stockholders offered testimony that for a day's work an advertising agency might be charged $200 for photographic services and $10 for five different pictures. *Id.* at 910, 428 S.W.2d at 72. The taxpayer argued that "the incidence of the gross-receipts tax should be similarly divided between nontaxable revenue from professional services and taxable revenue from the taking of pictures." *Id.* We stated that we had previously rejected such an argument in *Ferguson* v. *Cook*, 215 Ark. 373, 220 S.W.2d 808 (1949). We concluded by stating that while the tax would not apply in instances where the taxpayers "were paid for services only, such as consultations, without any photographs being involved . . . the principle cannot be extended to the point of separating the sale of the photograph from the exercise of that skill 'which adds to its value and was necessary to make it salable.' " *Larey* v. *Dungan-Allen*, 244 Ark. at 911, 428 S.W.2d at 73 (citation omitted).

In *Ragland* v. *Miller Trane Service Agency*, 274 Ark. 227, 623 S.W.2d 520 (1981), the taxpayer was in the business of inspecting, servicing, and repairing commercial heating and cooling devices and had two different types of contracts. *Id.* at 228, 623 S.W.2d at 521. The first was an "inspection only" contract,

and the Director agreed it was nontaxable. *Id.* at 229, 623 S.W.2d at 521. The second contract provided for the taxpayer to maintain and repair the units, in addition to inspecting them, a minimum of three times a year. *Id.* The trial court found that the full-coverage contract could be broken down into component parts for the purposes of collecting the gross receipts tax. In reversing, we stated that, under the rationale of our established case law, the inspection services enhanced the value of the full coverage contract, and increased the marketability of the taxable services; therefore, the entire transaction was taxable. *Id.* at 231, 623 S.W.2d at 522.

■ Most recently, in *Leathers* v. *A & B Dirt Movers, Inc.*, 311 Ark. 320, 844 S.W.2d 314 (1992), the taxpayer was a dirt hauler who contended that it provided the nontaxable service of hauling free dirt. *Id.* at 322, 844 S.W.2d at 315. The chancellor ruled that the transactions were not taxable. *Id.* We reversed because the taxpayer's records made the transaction appear as though it involved a sale of dirt, even though the record was devoid of any direct testimony that proved the sale of dirt. *Id.* at 330, 844 S.W.2d at 319. We held that Ark. Code Ann. § 26-18-506(a) & (d) (1992) requires a taxpayer to keep adequate tax records, and when a taxpayer fails to maintain the required records, the Director may make an estimated assessment of tax due, as "the burden of proof of refuting this estimated assessment is upon the taxpayer." *Id.* at 325, 844 S.W.2d at 316-17; Ark. Code Ann. § 26-18-506(d). We concluded that the transactions were taxable, because they involved the transfer and possession of tangible personal property.

■ In summary, just as in *Leathers* v. *A & B Dirt Movers, Inc.*, the taxpayer's records show the transactions were leases. The transactions were the type of mixed transactions that are fully taxable under *Larey* v. *Dungan-Allen* and its progeny. Finally, because Best did not maintain the required records, the burden of refuting the assessment was upon the taxpayer, *Leathers* v. *A & B Dirt Movers, Inc.*, 311 Ark. at 325, 844 S.W.2d at 316-17, and Best did not meet that burden.

■ Best urges us to adopt a "dominant-use test" for this case. To do so would require us to reject the reasoning of the above cases, and we decline to do so.

The chancellor ruled that Best was entitled to a refund on the additional ground that it provided sewer and sanitation services in the furtherance of public health, and those services are nontaxable. The Director assigns the ruling as error.

■ Arkansas Code Annotated § 26-52-301 levies an excise tax upon utilities or public service companies "except transportation services, sewer services, and sanitation or garbage collection services." *Id.* § 26-52-301(2). In short, utilities or other public services are subject to the tax, except for their transportation services, sewer services, and sanitation services. To prove that it comes within the exemption, Best must have proved that it was a utility or public service company engaged in sewer services.

■ In *Ragland* v. *Meadowbrook Country Club*, 300 Ark. 164, 777 S.W.2d 852 (1989), we said, "The difference between an exclusion and an exemption is that an exemption pertains to sales that would be covered were they not specifically exempted from the Act, while exclusion is simply not included in the first place." *Id.* at 168, 777 S.W.2d at 854. Stated differently, an exemption "presupposes a liability, and is properly applied only to a grant of immunity to persons or property which otherwise would have been liable to assessment, and exists only by virtue of constitutional or statutory provisions." 84 C.J.S. *Taxation* § 215 at 411 (1954). A taxpayer must prove entitlement to an exemption beyond a reasonable doubt. *City of Fayetteville* v. *Phillips*, 320 Ark. 540, 899 S.W.2d 57 (1995). Best failed to prove beyond a reasonable doubt that it was exempt from taxation as a utility or public service.

■ Best did not prove that it was regulated by the Arkansas Public Service Commission or the Arkansas Transportation Commission, that a city, state board, or commission had authorized it to service a territory, or that its rates were regulated by an official agency. In short, it failed to prove that it was a public utility as contemplated by Ark. Code Ann. § 23-1-101.

■ In *Quinn-Moore* v. *Lambert*, 272 Ark. 324, 614 S.W.2d 230 (1981), we said that a public utility is entitled to a guaranteed but limited return on its investment, and it cannot pick and choose whom it will serve, while a private entrepreneurship is entitled to pick and choose whom it will serve, but is

not entitled to a guaranteed return on its investment. *Id.* at 328, 614 S.W.2d at 232. Indeed, the term "public utility" implies a public use and service to the public, and the principal determinative characteristic of a public utility is service to, or a readiness to serve, an indefinite public that has a legal right to demand and receive its services or commodities. *See* 64 Am. Jur. 2d *Public Utilities* § 1 at 549 (1972). A public utility holds itself out to the public generally and may not refuse any legitimate demand for service, while a private business independently determines who it will serve. The record is devoid of any evidence that Best is required to serve any area, or indefinite public, or that it is entitled to a return on its investment.

In addition, the lease and service of a toilet does not fit within the definition of a public utility sewer service. Section 8-4-102 of the Arkansas Code Annotated defines "sewage" and "sewer system" as follows:

(1) "Sewage" means the water-carried waste products from residences, public buildings, institutions, or other buildings, including the excrementitious or other discharge from bodies of humans or animals, together with such groundwater infiltration and surface water as may be present.

. . .

(5) "Sewer system" means pipelines or conduits, pumping stations, and force mains, and all other constructions, devices, and appliances appurtenant thereto, which are used for conducting sewage or industrial water or other wastes to a point of disposal.

Ark. Code Ann. § 8-4-102(1) & (5) (Repl. 1993). In summary, Best failed to prove beyond a reasonable doubt that it was exempt as a public sewer service.

We need not address the Director's final point of appeal. Reversed and dismissed.

NEWBERN and CORBIN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. In *Ferguson v. Cook,* 215 Ark. 373, 220 S.W.2d 808 (1949), a dealer in cemetery monuments reported to the tax authority only 50% of the gross

proceeds of each sale because he attributed the other 50% to labor expended in the erection of the monuments. The case was tried on stipulations, and there was no evidence as to what might actually have been attributable to labor expended in the erection of monuments or in the creation of the monuments, engraving, etc. In that circumstance, we held the entire amounts taxable. The result in the *Ferguson* case also seems contrary to a statement of general principle written by Justice Frank G. Smith in that opinion, a statement with which I totally agree, as follows:

> This language appears to mean, and we so construe it, that where one sells an article in the preparation of which for sale he has expended labor, which adds to its value and was necessary to make it salable, he must pay the sales tax on the price received, without deduction for the value of the labor performed.

Ark. Code Ann. § 26-52-103(a)(2)(E) (Supp. 1995) provides that " 'sale' shall not include the furnishing or rendering of services, except as otherwise provided in this section." Section 26-52-103(a)(4), in pertinent part provides:

> "Gross receipts" or "gross proceeds" means the total amount of consideration for the sale of tangible personal property and such services are herein specifically provided for, whether the consideration is in money or otherwise, without deduction on account of the cost of the properties sold, labor services performed, interest paid, losses or any expenses whatsoever.

The confusion caused by the outset provision that a "sale" does not include services followed by a definition of "gross proceeds" which includes "labor services performed" has resulted in uncertainty and in conflicting decisions. For example, *Ragland v. Meadowbrook Country Club,* 300 Ark. 164, 777 S.W.2d 852 (1989), we held that the sale of food and beverages did not include the 15% "gratuity" included in the price to the customer for service. We distinguished *Belvedere Sand & Gravel Co.* v. *Heath,* 259 Ark. 767, 536 S.W.2d 312 (1976), in which we held taxable the total amount charged to customers by a sand and gravel company for its products, including the labor supplied to the taxpayer company by a contractor for delivery to its customer. Our distinction between the cases seemed to be that the

"gratuity" in the *Ragland* case was added to the cost of the food and beverages after the sale whereas the delivery cost of the sand or gravel in the *Belvedere* case was somehow more integral to the sale. That is a distinction without a difference.

We are on the wrong track, and we have been on it since the decision in the *Ferguson* case. It is obvious to me that the General Assembly intended that any service which goes into the creation of an item for sale and indeed adds to its value should be taxable. In view, however, of the general statutory definition of "sale," which excludes services, services ancillary to a sale should not be included. Such an interpretation would be consistent with what Justice Smith said in the *Ferguson* case, albeit probably not consistent with the result reached there.

The unreasonableness of the interpretation given by the majority opinion, and its portent for continued uncertainty in this area, is underlined by the parties' apparent agreement that we will allow a taxpayer to avoid the tax on such services if they are "separately stated" in the bill to the customer. The majority opinion states, "Since the non-taxable service was included as part of the total consideration received from the rental of the portable toilets, the charge for services constitutes part of the gross proceeds, and the entire proceeds are subject to taxation." That suggests a merchant can avoid taxation on services if they are billed separately from the charge for the item sold, regardless whether the services helped create the value of the item or were ancillary to the sale. Surely that cannot be the intent of the General Assembly. If services ancillary to a sale are to be taxed, the General Assembly could clearly say so. In the absence of such statutory language we should not permit the gross receipts tax on sales to be applied to such services.

I respectfully dissent.

CORBIN, J., joins in this dissent.