Richard BARCLAY, Director, Arkansas
Department of Finance and Administration *v.*
FIRST PARIS HOLDING COMPANY and Subsidiary,
First National Bank at Paris, Arkansas

00-1128 42 S.W.3d 496

Supreme Court of Arkansas
Opinion delivered May 10, 2001

[redacted]

*Mary Cameron*, for appellant.

*Jack, Lyon & Jones, P.A.*, by: *Eugene G. Sayre*, for appellee.

*Friday, Eldredge & Clark, LLP*, by: *Walter M. Ebel, III* and *Joseph G. Nichols, amicus curie* in support of appellees' position.

R AY THORNTON, Justice. In 1979, the General Assembly adopted Act 708, allowing corporate members of an affiliated group that files a federal consolidated income tax return, to file a consolidated Arkansas tax return. Following the adoption of Act 708, First Paris Holding Company [The Holding Company] was organized on March 27, 1980. At the time of its organization, the Holding Company owned eighty-six percent of the stock of First National Bank at Paris [First National]. The Holding Company and First National formed an affiliated group that filed consolidated tax returns for the years 1980 through 1994 for both federal and state taxes. The consolidated group filed its return on the basis of federal principles that exclude intercorporate dividend distributions between members of an affiliated group in the calculation of gross income for the consolidated group.

In 1994, appellant, the Arkansas Department of Finance and Administration [DFA], conducted an audit of the consolidated group's tax returns and imposed a tax on the intercorporate dividends, asserting that the provisions of Act 570 of 1965 only permitted the exemption of dividends received from First National by the Holding Company from the gross income of the consolidated group if the Holding Company owned at least ninety-five percent of the stock of First National. Appellant assessed appellees additional income taxes of $181,960.14, which appellees paid under protest.

The decision of the DFA was appealed to the Pulaski County Chancery Court, and the chancellor found that the provisions of Act 708 of 1979 allowed the filing of consolidated returns, and that intercompany distributions of dividends between corporate members of an affiliated group were excluded from computation of

taxable income for the taxpayer, the consolidated group. It is from that decision that appellant brings this appeal, and we affirm.

This case requires us to interpret two statutes relating to the taxation of closely related corporations. The first statute was enacted as Act 570 of 1965. Act 570 did not address the filing of consolidated returns, but was effective for corporations that filed separate tax returns. Act 570 provided that dividends payable by a subsidiary corporation to its parent, were exempt from taxation if the parent owned at least ninety-five percent of the subsidiary's capital stock.

The second statutory provision, as adopted by Act 708 of 1979, extended to Arkansas corporations the right of an affiliated group under federal tax laws to elect to consolidate tax returns for the purposes of state taxation. We are instructed by Act 708 of 1979 that "this Act is based upon the concept of filing federal consolidated income tax returns."

### Concept of consolidated tax returns

■ The basic federal rules for taxing corporations were enacted by Congress in 1909. A corporation, regardless of its organization into separate divisions, is taxed upon its taxable income, and in 1909 the rule was adopted that intercorporate dividends are excluded from the payee corporation's income. The principle has been refined and limited to address perceived abuses of the exclusion, but the principle that taxable income should not bear multiple levels of corporate tax is the fundamental policy underlying the taxation of dividends received by corporations. *See* George Mundstock, *Taxation of Intercorporate Dividends Under an Unintegrated Regime*, 44 TAX L. REV. 1 (1988). The Mundstock article also points out that the Revenue Act of 1918 provided statutory authority for consolidated returns when the corporation declaring dividends is, in effect, a part of an economic unit with the shareholder-corporation. Specifically, Mundstock states: "[N]o more tax should result than if the two corporations were one entity for tax purposes." *Id.*

■ As expressed by John M. Pearce in a comment published in the 1989 *Oregon Law Review*, "the general rationale behind the dividends-received deduction is to mitigate the double taxation of corporate earnings before such earnings are paid, and taxed again,

to individual shareholders." John M. Pearce, *The Intercorporate Divi-dends-Received Deduction: An Area of Increasing Complexity*, 68 OR. L. REV. 161 (1989). To the same effect, Boris I. Bittker and James S. Eustice, in their treatise *Federal Income Taxation of Corporations and Shareholders* § 13.42 (Supp. 2000), note:

> [T]he elimination of dividends from gross income is consistent with the theory that the group is, in effect, a single taxable enter-prise and that such earnings have already been reflected in the consolidated return and taxed once to the group.

*Id.* To eliminate or to reduce the double taxation of earnings within a consolidated taxpayer's return, the federal rule for filing consoli-dated returns specifically provides that "a dividend distributed by one member to another member during a consolidated year shall be eliminated." 26 CFR §1.1502-14 (a). Bittker and Eustice further note that:

> The basic concept underlying these provisions is that the consoli-dated group constitutes, in substance, a single unitary economic enterprise, despite the existence of technically distinct legal enti-ties; as such the group's tax liability ought to be based on its dealings with outsiders rather than on intra group transactions. This unitary enterprise concept lies at the heart of the treatment — both past and present — of intercompany transactions, which generally are eliminated in computing the group's consolidated taxable income. In effect, the results resemble in many respects the joint-return treatment of a husband and wife.

*Federal Income Taxation of Corporations and Shareholders* § 13.42.

It is clear that the concept of exclusion of intercompany divi-dends in computing taxable income of an affiliated group is central to the concept of filing federal consolidated tax returns. We next address the question whether, under Arkansas law, the Holding Company and National Bank were eligible to form an affiliated group and to file a consolidated return as provided by Act 708 of 1979, or whether they were restricted by Act 570 of 1965 from forming an affiliated group and realizing the benefits of filing a consolidated return.

*Statutory Interpretation*

■■ Our standard of review of a chancery court's decision in a tax case is *de novo. Pledger v. Troll Book Club, Inc.*, 316 Ark. 195, 871 S.W.2d 389 (1994). We will not disturb the chancellor's findings of fact unless they are clearly erroneous. *Id.* We also review issues of statutory construction *de novo* as it is for us to decide what a statute means. *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999). We are not bound by the decision of the trial court; however, in the absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Id.*

■■ The basic rule of statutory construction is to give effect to the intent of the legislature. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. *Id.* When a statute is ambiguous, we must interpret it according to the legislative intent. *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997). Our review becomes an examination of the whole act. We reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. We also look to the legislative history, the language, and the subject matter involved. An additional rule of statutory construction in the area of taxation cases is that when we are reviewing matters involving the levying of taxes any and all doubts and ambiguities must be resolved in favor of the taxpayer. *Central and Southern Co. v. Weiss*, 339 Ark. 76, 3 S.W.3d 294 (1999).

Appellant contends that Act 570 of 1965 was the controlling law at all times relevant to this case, and that it grants certain exemptions to corporations with subsidiaries, but only if the parent company owns ninety-five percent of the subsidiary's stock. Appellant argues that because the Holding Company does not own ninety-five percent of First National's stock, then the consolidated group may not claim this exemption. Act 570 of 1965 in relevant part states:

(2) The words 'gross income' do not include the following items, which shall be exempt from taxation under this act:

(j) Dividends received by a corporation doing business within this state from a subsidiary, if at least ninety-five percent of the subsidiary's capital stock is owned by such corporation doing business within the state.

*Id.*

■ Appellees respond to this argument by contending that they filed a consolidated tax return pursuant to Act 708 of 1979, and, therefore, they looked to the federal tax laws for guidance as to whether they could eliminate from the affiliated group's gross income the dividends paid to the Holding Company. Act 708 of 1979, which was titled "an Act to clarify the Arkansas statutes allowing corporations that are part of an affiliated group to file consolidated income tax returns and other purposes," provides in part that:

All corporations who are *eligible members of an affiliated group* (as that term is defined in 26 U.S. C. § 1504 (a) and (b) as of the effective date of this Act), which affiliated group files a Federal consolidated corporate income tax return pursuant to 26 U.S.C. §§ 1501–1505 as of the effective date of this Act, may *elect to file a consolidated Arkansas corporate income tax return.*

Act 708 of 1979 (emphasis added). We hold that the plain and unambiguous language of this statute is that corporations that become members of an affiliated group are eligible to file a consolidated tax return based upon the concepts of federal consolidated returns. Thus, the issue we must address is whether the provisions of Act 570 of 1965 restrict the formation of an affiliated group that may file a consolidated return, thereby eliminating intercorporate dividends from its gross income.

*Analysis*

■ The question remaining for resolution is whether Act 570 of 1965 precludes the Holding Company and the National Bank from becoming members of an affiliated group eligible to file a consolidated return because the Holding Company owns less that ninety-five percent of the National Bank's stock. As we have previously noted, Act 570 of 1965 did not address the formation of an

affiliated group to file a consolidated return, but merely expressed a threshold level for a parent and a subsidiary filing separate returns to exempt dividends if the stock ownership by the parent was ninety-five percent or greater of the stock of the subsidiary. This avenue for exemption of dividends between corporations filing separate returns remained effective from the time of its adoption until the present time.[1] Act 570 provides a means for a corporation that does not file a consolidated return to exempt from taxation the income received from dividends from a subsidiary. This interpretation of Act 570 harmonizes with Act 708, which offers a second means of imposing taxes upon the taxable income of a lawfully formed affiliated group electing to file a single consolidated return.

We next address the criteria for eligibility to form an affiliated group. Act 708 of 1979 specifically states that eligibility for becoming a member of an affiliated group for purposes of filing a consolidated Arkansas corporate income tax return is controlled by 26 U.S.C. § 1504 (a) and (b). That provision provides:

(1) The term 'affiliated group' means—

(A) 1 or more chains of includible corporations connected through stock ownership with a common parent corporation which is an includible corporation, but only if—

(B)(i) the common parent owns directly stock meeting the requirements of paragraph (2) in at least 1 of the other includible corporations, and

\* \* \*

(2) 80 percent voting and value test— The ownership of stock of any corporation meets the requirements of this paragraph if it—

(A) possesses at least 80 percent of the total voting power of the stock of such corporation, and

(B) has a value equal to at least 80 percent of the total value of the stock of such corporation.

---

[1] We note that Act 570 was amended in 1997 to conform to the eighty percent eligibility requirement for forming an affiliated group to file a consolidated return. *See* Act 1189 of 1997.

*Id.*

 It appears to us that the legislative intent of Act 708 of 1979 was to make available the choice for a corporation holding eighty percent of the voting power and total value of one or more other corporations to form an affiliated group with such corporations and for the affiliated group to file a single consolidated return on gross earnings from its business operations, thereby eliminating intercorporate dividends from taxation.

We note that this interpretation was followed by DFA from 1977 until 1994. DFA allowed corporations eligible under Act 708 to form an affiliated group and to file consolidated tax returns following the concepts of the federal tax code from the time Act 708 was passed in 1979 until 1994. Appellees were contacted by DFA on three occasions prior to 1994 by DFA auditors. DFA reviewed appellees' income-tax returns. The auditors did not challenge appellees' eliminations of dividends on the consolidated tax returns which they reviewed. In 1994, DFA decided to interpret Act 570 as restricting the provisions of Act 708, and decided to disallow the elimination of dividends from the consolidated gross income of an affiliated group when a parent corporation within the group did not own ninety-five percent of its subsidiary. We note that there were no statutory changes, nor were there any new regulations promulgated by the DFA to explain this new "audit position."

 Apparently, in 1994, DFA auditors simply decided that Act 570 of 1965 superseded Act 708 of 1979. This conclusion is wrong. Act 570 does not address consolidated returns, and if it did, the later Act 708 of 1979 would prevail. *See Dicken v. Missouri Pacific R.R. Co.*, 188 Ark. 1035, 69 S.W.2d 277 (1934) (holding that where two statues relating to the same subject are in conflict with each other the later statute controls). Act 708 contained a specific repealer clause amending conflicting portions of the Arkansas Revenue Code, of which Act 570 was a part. We conclude that eligibility to become a member of an affiliated group is controlled by Act 708, and that in a consolidated return by an affiliated group, intercorporate dividends are excluded. We do not find any ambiguity in the statutory provisions. Act 570 applies to separate tax returns filed by a non-consolidated parent and its subsidiary. Act 708 controls the requirement for eighty percent stock ownership for the formation of affiliated groups for the purpose of filing consolidated returns. We see no conflict between these statutory provisions, but if such

were to exist, the later act would prevail. *See Dicken, supra.* Accordingly, we affirm the trial court on this first point.

Appellant next argues that if we adopt the federal rules regarding the elimination of dividends then we would be unconstitutionally delegating to the federal government the General Assembly's ability to determine the net income of Arkansas taxpayers. Appellant further argues that this would be harmful to the tax system in Arkansas because it would be subject to change every time the federal government changes its tax laws. The language, appellant argues, delegates this unconstitutional authority to the federal government is as follows: "this Act is based upon the concept of filing federal consolidated tax returns."

Before specifically addressing appellant's point on appeal, we note:

> In reviewing the constitutionality of an act, we recognize that every act carries a strong presumption of constitutionality. The burden of proof is on the party challenging the legislation to prove its unconstitutionality, and all doubts will be resolved in favor of the statute's constitutionality, if it is possible to do so. An act will be struck down only when there is a clear incompatibility between the act and the constitution.

*City of Cave Springs v. City of Rogers*, 343 Ark. 652, 37 S.W.3d 607 (2001). Remaining mindful on this presumption, we turn now to appellant's challenge.

In *Leathers v. Gulf Rice Arkansas, Inc.*, 338 Ark. 425, 994 S.W.2d 481 (1999), we discussed the doctrine prohibiting delegation of legislative power. Relying on the United States Supreme Court, we explained:

> In determining whether an unconstitutional delegation has been made, the Court considers whether Congress "has attempted to abdicate, or to transfer to others, the essential legislative functions with which it is vested by the Constitution."

*Id.* (*citing Currin v. Wallace*, 306 U.S. 1939)). We have also noted that while the legislature may not delegate its power to make laws, it can make a law and prescribe the conditions upon which it may become operative. *Cave Springs, supra.*

Appellant cites *Cheney v. St. Louis Southwestern Railway Co.*, 239 Ark. 870, 394 S.W.2d 731 (1965), in support of its argument, that if we adopt the federal rules regarding the elimination of dividends, then we would be unconstitutionally delegating to the federal government the General Assembly's ability to determine the net income of Arkansas taxpayers. In *Cheney*, we determined that a statute, which expressly allowed the Interstate Commerce Commission to determine the net income of a railway, was an unlawful delegation of the General Assembly's taxing power to the federal government. The unlawful statute stated:

> [T]he income taxable in Arkansas of any corporation engaged in the business of operating a steam or electric railroad, express service, telephone or telegraph business, or other such forms of public service, shall be a proportionate part of the corporation's gross revenues, deducting therefrom a proportionate part of all deductions. *The revenues, deductions and the allocations thereof are to be determined under the Interstate Commerce Act pursuant to the Interstate Commerce Commission's standard classification of accounts.*

*Cheney, supra* (emphasis added).

The statutory language in *Cheney* is easily distinguishable from the statutory language in question in the present case. Specifically, in *Cheney*, the General Assembly delegated to the federal government, through the language of its Interstate Commerce Act, the authority to determine the revenues, deductions, and allocations for Arkansas taxpayers. This statute should be contrasted with the statute in question in the case now on review.

In the present case, the General Assembly was not attempting to abdicate or transfer to the federal government the right to determine how income is calculated in Arkansas. The provisions of Act 708 stated the requirements for determining eligibility to file a consolidated tax return in Arkansas in accordance with the provisions of 26 U.S.C. § 1504 (a) and (b) as of the date of passage of Act 708. We conclude that the language "this Act is based upon the concept of filing federal consolidated tax returns" was not a delegation of power to the federal government, it was instead the General Assembly's adoption of the conditions upon which the law for filing consolidated tax returns was to become operative.

Appellant also argues that if we allow appellees to claim an elimination of dividends without the Holding Company owning

ninety-five percent of First National's stock because they filed a consolidated tax return, then we would be treating taxpayers differently based on their election to file a consolidated return instead of a separate return. Appellant is procedurally barred from raising this argument on appeal because it was not raised below or ruled upon by the trial court. It is well settled that to preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling below. *Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998). Accordingly, we reject this argument without reaching the merits. However, we do note that there are numerous variations of tax consequences that result from a decision to elect to file a consolidated return, some of which are beneficial to the taxpayer, and some of which are not.

In its final point on appeal, appellant argues that the trial court applied the wrong burden of proof on the parties at trial. Specifically, appellant argues that the trial court erroneously placed the burden of proof on the DFA to prove that the additional assessment of taxes on appellees was proper. Appellant argues that the appropriate burden would have been for appellees to prove that the dividends were properly eliminated.

We discussed the issue of appropriate burdens of proof in *Ragland v. Meadowbrook Country Club*, 300 Ark. 164, 777 S.W.2d 852 (1989). In *Ragland*, the DFA argued that it was the taxpayer's burden to prove entitlement to a statutory exemption. *Id.* We noted that the taxpayer in that case was not claiming entitlement to an exemption, but instead was claiming an exclusion from coverage. *Id.* We explained the difference in the two taxing concepts, and noted that "a different burden of proof at the administrative and trial levels is required when an exemption or exclusion is at issue." We noted that:

> the taxpayer claiming an exemption shoulders the burden of establishing his claim. By the same logic, it follows that the agency claiming the right to collect a tax bears the burden of proving that the tax law applies to the item sought to be taxed.

*Ragland, supra.* Applying this rule to the case at hand, we hold that the trial court properly placed the burden on justifying the imposition of a tax upon intercorporate dividends that were excluded from taxation on the DFA. The facts in the case now on review are on all fours with those in *Ragland*. Specifically, the appellees in this case were not claiming an *exemption* from taxation they were instead claiming an *exclusion* from the consolidated group's gross income of

dividends paid to the Holding Company by First National. There-fore, it became DFA's burden to prove that appellees were not eligible to file, or improperly filed, a consolidated tax return that did not include the intercorporate dividends within the affiliated group. DFA did not meet this burden of proof. Accordingly, we affirm the trial court.

Affirmed.

CORBIN, J., concurs.

BROWN and IMBER, JJ., dissent.

DONALD L. CORBIN, Justice, concurring. I concur with the majority's decision to affirm the chancellor's ruling. I write separately because I view the issue presented differently than the majority. In my opinion, the key issue is whether dividends paid by a subsidiary to a parent corporation, holding more than eighty percent, but less than ninety-five percent, of the subsidiary's stock, should be reported as gross income when the corporations make up an affiliated group that files a consolidated corporate tax return. Resolution of this issue turns on this court's interpretation of Ark. Code Ann. §§ 26-51-404(b)(9) and 26-51-805 (Supp. 1992).

During the relevant dates in this case, section 26-51-404(b)(9) provided an exemption from gross income for dividends paid by a subsidiary corporation to its parent corporation, if that parent owned at least ninety-five percent of the subsidiary. That provision was originally enacted in Act 570 of 1965. At the time of its passage, Arkansas law did not provide a means for such affiliated corporations to file consolidated state income tax returns.

The General Assembly subsequently passed Act 708 of 1979, now codified as section 26-51-805, allowing corporations that are members of an affiliated group to file a consolidated Arkansas cor-porate income tax return. Section 26-51-805(a) directs DF&A to look to the federal laws to determine whether a group of corpora-tions is an "affiliated group," for purposes of filing a consolidated return. During the time in question here, federal tax regulations defined an "affiliated group" as one in which corporations share a common parent, and the parent owns at least eighty percent of the subsidiary. Also at that time, federal law provided that affiliated groups filing consolidated federal tax returns could eliminate from the group's gross income those dividends paid by the subsidiary to the parent.

DF&A does not dispute that Appellees were an affiliated group under the federal definition and that they were, therefore, eligible to file a consolidated state tax return. Nor does the agency dispute that federal regulations provided for the "elimination" of dividends distributed by one member of an affiliated group to another. The question then is whether the General Assembly intended to allow the same elimination for purposes of determining gross income of the affiliated group under state law. I believe that was the legislature's intention.

Our state system of income taxation is based on the federal system, and our legislature has consistently looked to the federal income tax regulations for guidance. For example, Ark. Code Ann. § 26-51-401 (Repl. 1997) provides that a taxpayer must calculate his state income tax liability using the same accounting method as used for federal income tax purposes. Similarly, Ark. Code Ann. § 26-51-402 (Repl. 1997) provides that a taxpayer must calculate his state income tax liability using the same income year as used for federal income tax purposes. More significantly, section 26-51-805(c) requires an affiliated group filing a consolidated state tax return to attach to its state return "a complete copy of the federal consolidated corporate income tax return filed with the federal Internal Revenue Service for that taxable year[.]" This court has previously held that requiring federal returns to be attached to state returns is an indication of the legislature's intent to conform state returns to the requirements of federal concepts. *See Central & Southern Cos., Inc. v. Weiss*, 339 Ark. 76, 3 S.W.3d 294 (1999).

In enacting section 26-51-805, the General Assembly intended this state's consolidated corporate income tax provisions to mirror the corresponding federal tax regulations. Subsection (g) specifically provides: "This section is based upon the concept of filing federal consolidated income tax returns." I agree with the chancellor that this "concept" is based on a considerable body of federal law regarding consolidated corporate tax returns that existed at the time the statute was enacted. That established body of law provided that an affiliated group could eliminate from its gross income dividends paid by one member of the group to another member. Accordingly, I believe that the chancellor did not err in concluding that section 26-51-805 requires DF&A to look to the federal laws in effect at the time the Act was passed to determine whether such dividends should be eliminated from the affiliated group's income.

I agree with the majority that section 26-51-404(b)(9) was not rendered meaningless by the passage of section 26-51-805. Rather,

it's exemption for dividends paid by a subsidiary to a parent corporation owning at least ninety-five percent of the subsidiary continued to apply to those corporate groups that elected not to file consolidated returns. For those corporations that elected to file consolidated returns, however, I believe that section 26-51-805 and its reference to the federal concept and federal tax regulations is controlling of those corporations that file a consolidated return.

Additionally, I agree with the majority that the purpose of allowing these intra-group dividends to be eliminated from the group's gross income is to prevent double taxation. When affiliated corporations file a consolidated return, effectively pooling their income and deductions, they should not be required to count dividends paid by one member of the group to another. The reason is that before the group's gross income is arrived at, each member of the group must first determine its individual income. The earnings that create the stock dividends will be included in the income of the first member. Thus, including them as dividend income to the second member would be tantamount to counting the same monies twice and would amount to double taxation of the group.

In sum, I believe that with the passage of Act 708 in 1979, the General Assembly differentiated between corporations that file separate returns and those that file consolidated returns. Because of the specific reference in Act 708 to the federal "concept" of filing consolidated corporate tax returns and the Act's deference to federal law to determine which corporate groups are eligible to file consolidated returns, I believe that the General Assembly intended to adopt the federal law regarding the elimination of dividends paid by the subsidiary to the parent from the group's consolidated income. Federal law at the time in question only required eighty percent ownership of the subsidiary by the parent. Under the facts of this case, Appellees were entitled to that elimination.

I cannot leave this subject without noting that in 1997, the General Assembly realized the confusion that was being created by these two statutes, and it amended section 26-51-404(b)(9) to require only eighty percent ownership of the subsidiary by the parent in order to get the state tax exemption. *See* Act 1189 of 1997. The Act reflects the legislature's awareness of the many pending cases that were litigating the very issue at stake in this case. Although it offers a disclaimer of sorts, attempting not to influence the outcome of those pending cases, the stated purpose for amending the section is quite telling:

It is further determined that *state income tax laws should have been the same as federal income tax laws* and this Act is adopted to clarify that these dividends are to be treated for state income tax purposes in the same manner they would be treated for federal income tax purposes for all corporations to which the Act is applicable.

Acts 1997, No. 1189, § 3 (emphasis added). This section makes one thing perfectly clear: Federal law was always intended to guide Arkansas law in the area of consolidated corporate income tax. For these reasons, I concur in the majority's decision to affirm the chancellor's order.

ROBERT L. BROWN, Justice, dissenting. In 1965, the General Assembly passed Act 570, which amended the Tax Code for income taxes and read in relevant part:

(2) The words 'gross income' do not include the following items, which shall be exempt from taxation under this act[:]

....

(j) Dividends received by a corporation doing business within this state from a subsidiary, if at least ninety-five percent (95%) of the subsidiary's capital stock is owned by such corporation doing business within this state.

Act 570 of 1965 is codified at Ark. Code Ann. § 26-51-404(b)(9) (Supp. 1995).

In 1979, the General Assembly passed Act 708 to clarify the filing of consolidated corporate income tax returns in Arkansas. Act 708 stated as part of its purpose: "This Act is based upon the concept of filing Federal consolidated income tax returns." The Act further stated that corporations that qualify for filing a consolidated return are those eligible members of an affiliated group as that term is defined in 26 U.S.C. § 1504(a) and (b). Act 708 of 1979 is codified at Ark. Code Ann. § 26-51-805(a)(1) (Repl. 1997).

The United States Code defines "affiliated group" as one or more chains of includable corporations connected through stock ownership with a common parent corporation. 26 U.S.C. § 1504(a)(1). The parent corporation of an "affiliated group" must own at least eighty percent of the stock of the includable corporation. 26 U.S.C. § 1504(a)(2).

The exemption percentage remained ninety-five percent in Arkansas until 1997 when Act 1189 was passed. Act 1189 changed the subsidiary's percentage from ninety-five percent to eighty percent. In section 3 of Act 1189, the General Assembly acknowledged that Arkansas income tax law was "at variance" with federal income tax law on the percentage figure and stated that the Act was passed to treat state and federal income taxes "in the same manner" and was not intended to affect existing controversies or have an effect on the interpretation of prior law.

The majority opinion concludes that since the 1979 Act references the United States Code's definition of "affiliated group" and states that the federal concept of consolidated returns will apply, the 1965 Act with the ninety-five percent figure was effectively repealed for consolidated returns. I do not see it that way.

To be sure, Act 708 of 1979 directs corporations to the United States Code for a definition of "affiliated group," but it is silent on what percentage of ownership of a subsidiary company is necessary for an income tax exemption. That, of course, is clearly and unambiguously set out in Act 570 of 1965. All Act 708 did was define what comprises an affiliated group to enable corporations to file consolidated returns. Consolidated returns, of course, may be filed for a variety of reasons and not simply to take advantage of the dividend exemption. Act 708 did not adopt or incorporate the federal regulation which provides the *exemption* from federal income tax for dividends paid by a corporation to a parent. *See* 26 C.F.R. § 1.1502-14. Hence, Arkansas's ninety-five percent criterion stayed in place and was not affected by the 1979 Act. Again, this ninety-five percent criterion was not repealed by the General Assembly until 1997. And the stated intent of the General Assembly in 1997 was to eliminate the variance in percentages between Arkansas and federal income tax law.

Here, we are talking about a tax exemption. Act 570 of 1965 makes that fact abundantly clear. Tax exemptions in this state must be proved beyond a reasonable doubt. *See City of Little Rock v. McIntosh*, 319 Ark. 423, 892 S.W.2d 462 (1995) (citing *Pledger v. Baldor Int'l*, 309 Ark. 30, 827 S.W.2d 646 (1992)). That is a hefty burden of proof for the taxpayers, as a strong presumption operates in favor of the taxing power. *See id.* (citing *Ragland v. General Tire & Rubber Co.*, 297 Ark. 394, 763 S.W.2d 70 (1989)). Moreover, we take pains to harmonize tax statutes which are seemingly in conflict. *See, e.g., Central & Southern Cos., Inc. v. Weiss*, 339 Ark. 76, 3

S.W.3d 294 (1999). And it is blackletter law for statutory construction to give effect to the specific statute over the general. *See Board of Trustees for City of Little Rock Police Dept. Pension & Relief Fund v. Stodola,* 328 Ark. 194, 942 S.W.2d 255 (1997) (citations omitted). Finally, this court has recently held that the legislative intent of Act 780 of 1979 was for concepts of federal taxation to apply "unless a different treatment is prescribed by Arkansas law." *Central & Southern Cos., Inc.,* 339 Ark. at 83, 3 S.W.3d at 299. Clearly, Arkansas law provided a different treatment for tax exemptions for subsidiary dividends.

Viewing the significant burden of proof on the Holding Company to prove its exemption as well as the clear statement of the stock ownership necessary in Arkansas for an exemption during the relevant time period, I would reverse the trial court and hold that the Holding Company did not qualify for the exemption. In my opinion, with Act 708 of 1979, the General Assembly merely adopted the federal concept of consolidated returns and the federal definition of affiliated groups while retaining Arkansas's specific statute on stock ownership. *See Central & Southern Cos., Inc. v. Weiss, supra.* That statutory interpretation easily harmonizes the two statutes.

Accordingly, I dissent.

IMBER, J., joins.