CLIFF HOOFMAN, Justice, dissenting. Because I believe the majority errs in reversing and remanding the circuit court’s order, I respectfully dissent. It is undisputed that appellee Gordon Pierce (“Gordon”) had been married and lived with his wife, Martha Pierce (“Martha”) for forty-six years prior to being admitted to a long-term-care facility on July 29, 2010, for health reasons. Rather than seeking Medicaid assistance immediately and hoping that his condition would improve, Gordon waited until December 29, 2011, to apply for assistance. It is undisputed that Gordon would have qualified for Medicaid benefits if the two retirement accounts that were titled in Martha’s name only were not considered countable resources. Therefore, as the majority correctly indicates, the sole issue on appeal is whether a 401k and an IRA owned by a community spouse are countable resources under federal law when determining Medicaid eligibility for an institutionalized spouse. In the absence of any binding federal or Arkansas case law on this specific issue, and rather than placing my reliance on Houghton v. Reinertson, 382 F.3d 1162 (10th Cir.2004), as the majority does, I find the analysis in Keip v. Wisconsin Department of Health & Family Services, 232 Wis.2d 380, 606 N.W.2d 543 (Wis.Ct.App.1999), more persuasive in this case. 11sThis court’s cardinal rule of statutory construction is to give effect to the intent of the legislature. Barclay v. First Paris Holding Co., 344 Ark. 711, 42 S.W.3d 496 (2001). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. Id. When a statute is ambiguous, we must interpret it according to legislative intent. Id. Our review becomes an examination of the whole act, and we reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. Id. We also look to the legislative history, the language, and the subject matter involved. Id. We have also explained that literal meaning yields to legislative intent if the literal meaning leads to absurd consequences contrary to legislative intent. Bank of Eureka Springs v. Evans, 353 Ark. 438, 109 S.W.3d 672 (2003). The majority aptly explains the background of the Medicaid program as it was enacted in 1965 and the enactment of the Medicare Catastrophic Coverage Act of 1988 (“the MCCA”), 42 U.S.C. § 1396r-5. In Arkansas Department of Human Services v. Schroder, this court explained, MCCA was designed “to protect the elderly and disabled population from the financial disaster caused by catastrophic health care expenditures not currently reimbursed under the Medicare and Medicaid programs.” H.R.Rep. No. 100-105, pt. 2, at 65-68 (1998), reprinted in 1988 U.S.C.C.A.N. 803, 888. MCCA also “sought to close the loophole where a couple could shelter their assets by transferring them into the community spouse’s name while the institutionalized spouse received Medicaid benefits.” Johnson v. Guhl, 166 F.Supp.2d 42 (D.N.J.2001). 353 Ark. 885, 890-91, 122 S.W.3d 10, 14 (2003). Under 42 U.S.C. § 1396a(a)(10)(C)(i) and 42 U.S.C. § 1396a(r)(2)(A) of the Medicaid Act, our state program can be “no more restrictive” in methodology for determining | ^eligibility than the federal methodology employed under the Supplemental Security Income (“SSI”) program, and the “methodology is considered to be ‘no more restrictive’ if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance.” 42 U.S.C.A. § 1382c(f)(l) provides, For purposes of determining eligibility for and the amount of benefits for any individual who is married and whose spouse is living with him in the same household but is not an eligible spouse, such individual’s income and resources shall be deemed to include any income and resources of such spouse, whether or not available to such individual, except to the extent determined by the Commissioner of Social Security to be inequitable under the circumstances. Pursuant to this authority, the Commissioner has promulgated 20 C.F.R. § 416.1202, which provides, § 416.1202 Deeming of resources. (a) Married individual. In the case of an individual who is living with a person not eligible under this part and who is considered to be the husband or wife of such individual under the criteria in §§ 416.1802 through 416.1835 of this part, such individual’s resources shall be deemed to include any resources, not otherwise excluded under this subpart, of such spouse whether or not such resources are available to such individual. In addition to the exclusions listed in § 416.1210, we also exclude the following items: (1) Pension funds that the ineligible spouse may have. Pension funds are defined as funds held in individual retirement accounts (IRA), as described by the Internal Revenue Code, or in work-related pension plans (including such plans for self-employed persons, sometimes referred to as Keogh plans). However, the MCCA, or “spousal impoverishment provisions,” was subsequently enacted, and 42 U.S.C. § 1396r-5 provides the following relevant provisions: § 1396r-5. Treatment of income and resources for certain institutionalized spouses 12n(a) Special treatment for institutionalized spouses (1) Supersedes other provisions In determining the eligibility for medical assistance of an institutionalized spouse (as defined in subsection (h)(1) of this section), the provisions of this section supersede any other provision of this subchapter (including sections 1396a(a)(17) and 1396a(f) of this title) which is inconsistent with them. [[Image here]] (3) Does not affect certain determinations Except as this section specifically pro- . vides, this section does not apply to— (A) the determination of what constitutes income or resources, or (B) the methodology and standards for determining and evaluating income and resources. [[Image here]] (5) Resources defined In this section, the term “resources” does not include— (A) resources excluded under subsection (a) or (d) of section 1382b of this title, and (B) resources that would be excluded under section 1382b(a)(2)(A) of this title but for the limitation on total value described in such section. 42 U.S.C. § 1382b lists a number of specifically excluded items from resources, including a home, household goods, personal effects, and an automobile. However, none of the listed exclusions in this section include pensions or retirement accounts, nor does the section specifically exclude pensions or retirement accounts. Thus, the issue in this case requires this court first to decide whether the exclusion under the SSI regulations for an ineligible spouse’s pension and IRA remains viable under the subsequently enacted spousal-impoverishment provisions. I would conclude, as did the court in Keip and Hough-ton, that the provisions of the spousal-impoverishment law are ambiguous in this respect. The court in Keip resolved the ambiguity by looking to the legislative intent of the MCCA as our rules of statutory construction would require us to do. We conclude that the more reasonable interpretation is that Congress did not intend |glto make it more difficult for a community spouse to remain self-sufficient by requiring that spouse to spend down or diminish the value of a pension fund or IRA in order to render his or her institutionalized spouse eligible for MA [medical assistance or Medicaid]. [[Image here]] [T]he explanation contained in the House Report regarding the spousal impoverishment provisions [states,] “The purpose of these revisions is to assure that the community spouse in these circumstances has income and resources sufficient to live with independence and dignity.” H.R. REP. No. 100-105(11), at 69 (1988), reprinted in 1988 U.S.C.C.A.N. 803, 892. Similarly, if we consider the scope and context of the spousal impoverishment provisions enacted in 1988, it seems clear that congressional intent was to preserve existing exclusions, while increasing the amount of assets a community spouse may retain. Except as the new provisions “specifically” provide, the “determination of what constitutes ... resources” was not to change under the spousal impoverishment provisions. [[Image here]] We fail to see how eliminating the exclusion for a spouse’s pension or IRA, an exclusion that was explicitly recognized under SSI/MA eligibility rules prior to enactment of the spousal impoverishment provisions, assists in “closing a loophole” exploited by asset transfers between spouses. Employee pension funds and IRAs are not readily transferable between spouses. They are thus not the type of assets that could easily be retitled on the eve of the owning spouse’s institutionalization. In summary, we conclude that the more reasonable interpretation of 42 U.S.C. § 1396r-5 is that the statute does not remove the exclusion for an IRA held by a community spouse when an institutionalized spouse applies for MA. • The ineligible spouse’s IRA would be excluded in determining whether the applying spouse would be eligible for SSI, and Wisconsin’s MA eligibility criteria may not be more restrictive than federal SSI eligibility requirements. The spousal impoverishment provisions only supersede those SSI eligibility criteria which are inconsistent with the provisions of § 1396r-5. In particular, the determination of what constitutes countable resources for eligibility purposes is unaffected unless the section “specifically provides” for different treatment. Nothing in § 1396r-5 specifically overrides the treatment of spousal IRAs for purposes of MA eligibility determinations, and reading in a repeal of the exclusion would be contrary to the primary purpose of the spousal impoverishment provisions. Keip, 606 N.W.2d at 549-51 (footnotes omitted). |22I agree with the analysis in Keip and the resolution of the ambiguity presented in applying the required federal law for the purposes of determining medicaid eligibility. The MCCA only supersedes those SSI eligibility criteria that are inconsistent with the provisions of section 1396r-5, and section 1396r-5 does not specifically override the exclusion of spousal pensions and IRAs for the purposes of Medicaid eligibility determinations. Furthermore, because our state program must be “no more restrictive,” Martha’s IRA and 401k accounts should not have been included as countable resources in determining Gordon’s eligibility. To hold otherwise, as the majority does, would be inconsistent with the stated legislative intent for the MCCA’s enactment. Additionally, I do not agree with the majority’s conclusion that 20 C.F.R. § 416.1202(a) does not apply because Gordon was not “living with” his or her spouse. This term is undefined in the regulation. However, it is undisputed that Gordon was married to, and lived with, Martha for forty-six years, and he was only institutionalized for medical reasons outside of his control. The majority appears to summarily conclude that “living together” must require the spouses to physically be located under the same roof at the time of the application for benefits. Therefore, the fact that Gordon delayed seeking Medicaid eligibility for seventeen months after his institutionalization in the hopes that he would recover and return home somehow now renders him ineligible because they were not “living together” at the time of the application for benefits. This literal interpretation, in my opinion, does not give effect to the intent of the MCCA or the regulation. The consequences of the majority’s interpretation would allow | ;»¡an individual who applied for Medicaid eligibility before he or she was institutionalized or immediately after he or she was institutionalized (thereby fitting under some definition of a “temporary absence”) to qualify for benefits, but the interpretation would penalize and exclude from eligibility an individual who waited to apply for the same benefits in the hopes that he or she may return home and not need the benefits. In the past, this court has said that it will not engage in interpretations that defy common sense and produce absurd results. Shipley, Inc. v. Long, 359 Ark. 208, 216, 195 S.W.3d 911, 915 (2004). Rather, I would hold that Gordon met the requirements of section 416.1202(a), excluding Martha’s retirement accounts as countable resources, because it is consistent with the legislative intent “to assure that the community spouse in these circumstances has income and resources sufficient to live with independence and dignity.” H.R.Rep. No. 100-105(11), at 69 (1988), reprinted in 1988 U.S.C.C.A.N. 803, 892. As such, I would affirm the circuit court’s order reversing and remanding the hearing officer’s order in this case.